Argued July 1, affirmed as modified September 18, 1963

# OREGON STATE BAR *v.* JOHN H. MILLER
## formerly EXECUTIVE ESTATE
## PLANNERS, INC. ET AL
### 385 P. 2d 181

*James H. Clarke,* Portland, argued the cause for appellant. With him on the briefs was Malcolm J. Montague, Portland.

*Robert A. Leedy,* Portland, argued the cause for respondents. With him on the brief were Barzee, Leedy & Tassock.

H. H. Perry, Jr., Albany, Georgia; Wayland B. Cedarquist, Chicago, Illinois; Jonathan F. Ells, Winsted, Connecticut; Raymond Reisler, Brooklyn, New York; Warren H. Resh, Madison, Wisconsin; R. Carleton Sharretts, Jr., Baltimore, Maryland; George H. Turner, Lincoln, Nebraska; and Melvin F. Adler, Fort Worth, Texas, filed a brief as amicus curiae for the American Bar Association.

Leonard L. Silverstein and Gerald H. Sherman, Washington, D. C., filed a brief as amicus curiae for Advanced Life Underwriting.

Before McALLISTER, Chief Justice, and ROSSMAN, PERRY, SLOAN, O'CONNELL, GOODWIN and LUSK, Justices.

O'CONNELL, J.

Plaintiff seeks to enjoin defendants from the unauthorized practice of law. ORS 9.160.[1] The trial court entered a decree enjoining defendants from

---

[1] ORS 9.160 "Except for the right reserved to litigants by ORS 9.320 to prosecute or defend a cause in person, no person shall practice law or represent himself as qualified to practice law unless he is an active member of the Oregon State Bar."

carrying on certain activities related to the business of preparing estate plans. The decree also specified that certain conduct in carrying on the business of defendants did not constitute the practice of law. Plaintiff appeals, praying for a modification of the decree on the grounds that it is vague and inconsistent and that it permits defendants to practice law in connection with the conduct of some of its business.

Defendant Miller is the principal stockholder and president of defendant, Executive Estate Planners, Inc. Mr. Miller is not a lawyer. The nature of defendants' business is described by Mr. Miller as follows:

"A service organization offering a service to aid in financial and estate planning of individuals. That primarily. They have ventured into the field of pension and profit-sharing plans for businesses, individuals—businesses, I think. We have sold life insurance, received commission on it. That is what we do.

"* * * The planning of a person's affairs in order to maximize the benefits to their family while living and in the event of death, and to attempt to conserve as much of the estate as possible consistent with the client or the estate owner's desires."

Mr. Miller also engages in the business of selling insurance. He argues that the estate planning business is merely incidental to the business of selling insurance. However, it was clearly established that the estate planning business was carried on as a distinct enterprise offering service to clients irrespective of their insurance needs.

The defendant company solicits business through salesmen who are paid a percentage of the fee charged for an analysis of the client's estate. A variety of factors reflecting upon tax liability are considered in

preparing the analysis. For example, a report to the client might contain suggestions relating to the transfer of assets, the making of gifts, the use of the marital deduction, the use of inter vivos and testamentary trusts, and other devices designed to minimize taxes. The client's will is examined for the purpose of determining the need for change with regard to reducing taxes. These and other suggestions are a standard part of the service performed by defendants.

■ Much of the advice contained in the report to the client could not be given without an understanding of various aspects of the law, principally the law of taxation. Most of the advice is in terms of "suggestions." In each instance the client is urged to consult his own attorney. But whether the report takes the form of suggestions for further study or as a recommendation that the suggestions be subjected to further scrutiny by a lawyer, the fact remains that the client receives advice from defendants and the advice involves the application of legal principles. This constitutes the practice of law.

■ Defendants contend that they employ the law in essentially the same manner as many types of businesses which require the understanding and application of legal principles by those who are not admitted to the bar, as for example, the architect who advises a prospective builder that a proposed structure does not conform to the applicable building code, or the travel agent who advises his customer of passport requirements. It must be conceded that frequently advice given in the course of carrying on a business is shaped by a knowledge of the applicable law. But the giving of such advice is not in every instance regarded as the practice of law. The legal ingredient in the advice may be so insubstantial as to call for the appli-

cation of the principle *of de minimis non curat lex*. This is not to say that we adopt the view permitting the practice of law where the legal element is merely incidental to the business activity being carried on.[②] To fall outside the proscription of the statute the legal element must not only be incidental, it must be insubstantial. It cannot be said that one who plans another person's estate employs the law only in an insubstantial way.

There remains only the question of the adequacy of the lower court's decree. The decree was as follows:

"1. Defendants are declared not to be engaged in the unauthorized practice of law when they perform the following activities:

"a. Collecting information on customer or potential customer's financial affairs, including kind and value of assets.

"b. Questioning customers as to the customer's desires as to the amount of estate to be left in the case of death.

"c. Advising the customer as to his life insurance requirements, amount, kind, etc., including approximate estate cash requirements brought about by taxes.

"d. Advising customers on the tax consequences of life insurance and on methods of premium payments and settlement options and other matters affecting the tax consequences of the insurance.

"e. Preparing the policies of insurance.

"2. Defendants are declared to be engaged in the unauthorized practice of law when they perform the following activities:

"a. Suggesting, recommending, or advising

---

[②] This view was rejected in Oregon State Bar v. Security Escrows, Inc., 75 Adv Sh No. 12, 635 at 643, 233 Or 80, 377 P2d 334 (1962).

on the form or contents, in whole or in part, of legal documents, and particularly wills and trusts;

"b. Directly or indirectly preparing, construing, or drafting legal documents, including wills and trusts;

"c. Rendering any legal opinion or advice, particularly as to the tax consequences of any activity or asset except life insurance or annuity plans;

"d. Preparing any estate plan, except that part of the plan which directly concerns life insurance or annuities;

"e. Holding themselves out as persons who prepare legal documents, give legal advice, or prepare estate plans, whether by use of business names or otherwise; and

"f. Employing any person, firm or corporation, to give legal advice to customers of defendants.

"3. Defendants are hereby perpetually enjoined from performing any of the activities set forth in paragraph 2 of this decree."

■ Plaintiff objects to the decree on the ground that it permits defendants to practice law as an incident to the business of selling life insurance. Part 1(c) of the decree permits defendants to estimate the cash requirements for estate tax purposes. In many, if not in most cases, to make such an estimate would require an understanding and application of the tax laws to the client's estate. This would constitute the practice of law. Part 1(d) permits defendants to advise customers on the tax consequence of life insurance.

The life insurance needs of the client can be determined only in relation to the client's estate as a whole. Whether life insurance is preferable to some other method of distributing the assets of the estate calls

for an appraisal requiring an understanding of relevant legal principles. An insurance salesman can explain to his prospective customer alternative methods of disposing of assets, including life insurance, which are available to taxpayers *generally*. He may inform his prospect in general terms that life insurance may be an effective means of minimizing his taxes. He cannot properly advise a prospective purchaser with respect to his *specific* need for life insurance as against some other form of disposition of his estate, unless the advice can be given without drawing upon the law to explain the basis for making the choice of alternatives.[9]

The decree of the lower court can be construed to permit this type of advice. To eliminate the ambiguity the following decree is substituted for that entered by the lower court. Defendants are enjoined from preparing estate plans embodying legal analysis either as a separate service or as an incident to carrying on the business of selling insurance.

Decree modified.

---

[9] See Chicago Bar Association v. Financial Planning, Inc. (Superior Court, Cook County, Illinois), 24 Unauthorized Practice News No. 2, p. 29 (1958); Opinion 1959-A, American Bar Association Standing Committee on Unauthorized Practice of Law; Eplen, Unauthorized Practice and Estate Planning, 26 Unauthorized Practice News No. 2, p. 104 (1960).