Argued November 3, affirmed as modified December 28, 1977, petition for rehearing January 17, 1978
See also 280 Or 713

OREGON STATE BAR, *Respondent,*

*v.*

WRIGHT, *Appellant.*

(TC 76-1522, SC 24773)

573 P2d 283

Robert J. Wright, Noti, argued the cause and filed briefs in propria persona.

Paul D. Clayton, of Luvaas, Cobb, Richards & Fraser, Eugene, argued the cause for respondent. With him on the brief was Michael F. Jarvill, of Jarvill & Jarvill, Eugene.

*Before Holman, Presiding Justice, and Tongue, Howell, Bryson, Lent and Linde, Justices.

TONGUE, J.

## TONGUE, J.

The plaintiff, Oregon State Bar, brought this suit to enjoin defendant from practicing law. Defendant filed various motions, including motions for summary judgment, challenging equity jurisdiction, and for a change of judge. Plaintiff filed a motion for summary judgment. The trial court denied defendant's motions, allowed plaintiff's motion for summary judgment and entered a permanent injunction. Defendant appeals.

Because defendant is not a lawyer we shall consider each of his 13 assignments of error.

*Defendant's first assignment of error* is that "the court erred by taking equity jurisdiction in an action at law and issuing an injunction to restrain criminal activity or conduct." In support of this assignment of error it is contended that the unauthorized practice of law is a crime because ORS 9.990 provides for criminal penalties and that "by exercising equity jurisdiction, the court below erroneously denied defendant's right to trial by jury" under the constitutions of Oregon and the United States.[1]

In considering this assignment of error it is first important to note that defendant has expressly admitted that he not only practiced law in the past, although "without charge" for his services, but that he intends to continue to do so in the future and "intends to charge a fee for inferrior [sic] court representation in the future."[2]

---

[1] ORS 9.990(1) provides:

"Any person who violates ORS 9.160 shall be fined not more than $500 or imprisoned in the county jail for a period not to exceed six months, or both."

ORS 9.160 provides as follows:

"Except for the right reserved to litigants by ORS 9.320 to prosecute or defend a cause in person, no person shall practice law or represent himself as qualified to practice law unless he is an active member of the Oregon State Bar."

[2] Because defendant has expressly admitted that he had engaged in conduct which constitutes the practice of law and that he intends to continue to do so, we need not in this case attempt to define the practice of law and draw a line between conduct which constitutes the practice of law and conduct which may not constitute the practice of law.

The brief filed by defendant in this court and signed by him personally includes the following statements:

"Defendant admits practicing law in the inferrior [sic] courts within the meaning of ORS 52.060 and full[y] admits drafting the pleadings, briefs and demurrers for scores of people in the Circuit courts of this state within the meaning of the [next friend] doctrine established in *Johnson v. Avery* [referring to a concurring opinion by Justice Douglas in *Johnson v. Avery,* 393 US 483 (1969)]. * * *

"* * * * *

"* * * The practice of law consists of those tasks traditionally performed by attorneys. Typical of these is the giving of legal advise [sic] and the preperation [sic] of wills, contracts and other legal instruments. * * * Nor is the practice of law limited to the confines of the Courtroom. * * *

"* * * * *

"* * * Defendant further admited [sic] to representing others in Justices courts in some 10 cases with the Courts permission. Those 10 cases were criminal or quasi-criminal before juries and defendant won all of them for his friends. * * *

"* * * * *

"* * * [D]efendant contends that what [he] is doing is absolutely authorized since [he] charges no fee for his assistance but intends to charge a fee for inferrior [sic] court representation in the future. Defendant maintains that if a citizen of this community comes to me and tells me no lawyer will take his case without a $2500 retainer fee and that he can not afford a lawyer, I will assist him in drafting his complaint so that he can have his day in court and will do so for free. * * *

"* * * * *

"* * * My knowledge of the practice of law did not come from education. It came from expierence [sic] which was good enough for Abraham Lincoln and it's good enough for me. * * *

"* * * * *

"* * * *[I]f the public seeks me out for representation in the inferrior [sic] courts that is free enterprise and that*

*gentlemen is what [this] case is really all about."* (Emphasis added)

In addition, in a petition for removal of this case to the District Court of the United States, also signed by defendant, it is stated that:

"Mr. Wright is employed as a non union lawyer in the inferrior [sic] courts of Oregon and the injunction sought would put him out of business. * * *

"* * * * *

"Mr. Wright contends that the State Bar's action against [him] is not for the protection of the public as much as it is to establish a monopoly over the inferrior [sic] courts which state law does not grant to the State Bar membership. * * *'"

We agree that the basic question to be decided in this case is whether, on a theory of "free enterprise," any person has a right to practice law, despite the statute forbidding persons to practice law who are not properly qualified and accredited, as evidenced by membership in the Oregon State Bar.

In considering this question, it is important to note that lawyers are by no means unique in this respect. Indeed, there is no "right," as a matter of "free enterprise," to engage in many professions and occupations because of the provisions of statutes which provide that only persons who are properly qualified, accredited and licensed by a board or commission established by statute may engage in those professions and occupations. These include doctors, dentists, architects, engineers, accountants, real estate brokers, land surveyors, funeral establishments, auctioneers, barbers, plumbers, and many other professions and occupations.[3]

Moreover, the Oregon State Bar does not operate as an independent licensing authority, but as an instrumentality of the Judicial Department of the government of the State of Oregon and and its members are

_____
[3] *See* ORS chs 670 to 703.

not only officers of the courts, but are subject to discipline by the courts for misconduct. (*See* ORS 9.010 and 9.460 to 9.580, inclusive.)

■ The reason for the statutes relating to all of these professions and occupations is to protect the public from the consequences resulting from attempts to engage in such professions and occupations by persons who are not properly trained and qualified to do so. Indeed, this has been expressly recognized by this court in *State Bar v. Security Escrows, Inc.,* 233 Or 80, 87, 377 P2d 334 (1962), holding that:

> "* * * Every lawyer knows, for example, how easily a carefully constructed estate plan or tax-minimizing plan can be devastated by the innocent intervention of a layman armed with the best of intentions and the seal of a notary public. We are justified in taking judicial notice of the fact that badly drawn instruments create not only needless litigation but needless loss and liability. A little of this mischief may flow from the carelessness of lawyers, but by far the most of it is the work product of laymen. In either case the injured party may have a cause of action for his damages, but it is in the public interest to keep these difficulties to a minimum."

and that

> "* * * Laymen are excluded from law practice * * * solely to protect the public. * * *"

Also, as held in *Aronson v. Ambrose,* 479 F2d 75, 77 (3d Cir 1973):

> "The interest of a state or territory in promoting the speedy and efficient administration of justice in its courts by assuring the competence and discipline of its bar is great * * *."

Based upon that reasoning, this court in *Security Escrows, Inc.,* affirmed the entry of an injunction to enjoin a corporation from engaging in the practice of law. To the same effect, *see Oregon State Bar v. Gilchrist,* 272 Or 552, 538 P2d 913 (1975), and *State Bar v. Miller & Co.,* 235 Or 341, 347, 385 P2d 181 (1963), in which this court also approved the entry of

an injunction against the unauthorized practice of law by a nonlawyer.

■ It is true, as contended by defendant, that the injunctive powers of a court of equity will not ordinarily be exercised in aid of the enforcement of a criminal statute. *State ex rel Petersen v. Martin,* 180 Or 459, 466, 176 P2d 636 (1947). As held in that case, however, an injunction is nevertheless proper when the conduct of the defendant is such as to constitute a "persistent and continuous violation" of a statute designed to protect the public (public health, in that case) and when "it is apparent that equitable relief by way of an injunction will provide more adequate protection of the public interests than would a criminal prosecution for each separate violation" (citing other authorities to the same effect).

■ That decision by this court is in accord with decisions by courts of other states. Thus, as stated in an Annotation in 94 ALR 359 (at 363) (1935):

"The courts have consistently affirmed, * * * that, while injunction does not lie merely to prevent commission of crime, the criminality of an act or series of acts, such as the unlawful practice of law, does not bar injunctive relief if otherwise there is ground for it. * * *"

The reported case which was the subject of that annotation, *Fitchette v. Taylor,* 191 Minn 582, 254 NW 910, 911, 94 ALR 356 (1934), held that:

"* * * Ordinarily, injunction does not lie merely to prevent commission of crime. But the criminality of an act or series of them does not bar injunctive relief if otherwise there is ground for it.
"* * * * *

"It is not a single act that is complained of. It is a series of doings amounting to a well-settled custom which defendant would continue if he were not enjoined. That such a course of conduct would be unlawful is obvious. * * *"

[ 699 ]

If defendant's position were to be accepted there would be no practical means of "assuring the competence and discipline" of persons engaged in the practice of law in Oregon. Not only laymen would have a "right" to do so, but lawyers disbarred for dishonesty or incompetence would have the same "right."

It is true, as stated by defendant, that in the days of Abraham Lincoln one could become a lawyer by "reading law." But Abraham Lincoln satisfied the requirements of that day to become a duly qualifed and accredited lawyer.[4]

■ In our opinion, and for these reasons, an injunction by a court of equity is an appropriate remedy when, as in this case, a nonlawyer is engaged in open, persistent, continuous and admitted violation of the statute enacted by the Oregon legislature which prohibits nonlawyers from practicing law. It follows that the trial court did not err in the issuance of an injunction as a proper and appropriate remedy in this case.[5]

■ *Defendant's second assignment of error* is that "ORS 9.160 is unconstitutional * * * under the 14th Amendment to the Federal Constitution." In support of this assignment defendant contends that ORS 9.160 is unconstitutional "on its face in that citizens of common intelligence as well as those with a license to practice law must necessarily gues [sic] at [it's] [sic] meaning and differ as to [it's] [sic] application."

As previously noted, however, defendant "admits practicing law in the inferrior [sic] courts." He also

---

[4]Hill, Lincoln the Lawyer 56-61 (1906).

[5]Defendant also contends in its reply brief that the complaint of the Oregon State Bar did not allege that the injunction was necessary to protect the public. Defendant demurred to the complaint on the ground that it failed to state facts sufficient to constitute a cause of action. Because, however, the bar sought an injunction against the violation of a statute which was presumably enacted to protect the public, we hold that the failure to specifically allege that an injunction was necessary to protect the public interest was not fatal to the sufficiency of the complaint. In any event, the overruling of defendant's demurrer is not assigned as error on this appeal.

[ 700 ]

admits to the understanding that "[t]he practice of law consists of those tasks traditionally performed by attorneys"; that "[t]ypical of these is the giving of advise [sic] and the preperation [sic] of wills, contracts and other legal instruments," and that he is a "non-union lawyer." In view of these and other admissions by defendant it is apparent that there was no question in his mind as to what constitutes the practice of law for the purposes of ORS 9.160, which, as previously noted, provides that no person other than an active member of the Oregon State Bar shall "practice law."

In *Civil Service Comm. v. Letter Carriers,* 413 US 548 (1973), in rejecting a similar "void for vagueness" contention, the Supreme Court of the United States said (at 579) that:

"\* \* \* Surely, there seemed to be little question in the minds of the plaintiffs who brought this lawsuit as to the meaning of the law, or as to whether or not the conduct in which they desire to engage was or was not prohibited by the Act."

To the same effect, as held in *Brodrick v. Oklahoma,* 413 US 601 (1973), that court said (at 608) that:

"Even if the outermost boundaries of § 818 may be imprecise, any such uncertainty has little relevancy here, where appellant's conduct falls squarely within the 'hard core' of the statute's proscriptions and appellants concede as much."

For the same reasons, we hold that ORS 9.160 is not so "vague" as to be unconstitutional in its application to the facts of this case.

■ *Defendant's third assignment of error* is that "ORS 52.060 applies to both criminal and civil proceedings and it was error for the Court to issue an injunction against it."[6] It also appears to be defendant's contention that he has a right to appear as a lawyer in all

---

[6]ORS 52.060 provides:

"Any person may act as attorney for another in a justice's court, except a person or officer serving any process in the action or proceeding, other than a subpena."

[ 701 ]

proceedings in all "inferior courts," including the district courts and municipal courts, and in both criminal and civil proceedings in such courts.

In response to the first of these contentions the Oregon State Bar contends, however, that although defendant may appear in a *civil* proceeding in a justice court by reason of ORS 52.060, where criminal proceedings are involved, the provisions of ORS 156.010 make criminal proceedings in a justice's court subject to criminal procedure statutes, except as specifically provided by statute and that ORS 156.010 "does not otherwise specifically provide by statute and does not refer to the criminal proceedings in justice court."[7]

We agree with defendant's contention, to the contrary, that ORS 52.060, in permitting "any person to act as attorney for another in a justices court," does not distinguish between civil and criminal cases. Although ORS 156.010 provides that a criminal action in a justice court is "commenced and proceeded to determination * * * in the manner provided by criminal procedure statutes," those statutes relate to procedure.[8] The Oregon State Bar does not refer to anything in those statutes which relates to who may appear as attorneys on behalf of defendants in criminal proceedings, whether in justice courts or in other courts.

Accordingly, we hold that the trial court erred in holding, by the terms of its final decree, that defendant may "appear as counsel as defined in ORS 9.310 in [only] a *civil* case in a justice court" and that the terms

---

[7] ORS 156.010 provides:

"A criminal action in a justice's court is commenced and proceeded in to final determination, and the judgment therein enforced, in the manner provided in the criminal procedure statutes, except as otherwise specifically provided by statute."

[8] *See also Justice Courts in Oregon,* 53 Or L Rev 411, 424 (1974), stating that the criminal procedure statutes set forth some specific rules for district and justice courts providing for "somewhat simpler procedure," recognizing that district courts and justice courts generally handle less serious offenses than circuit courts.

[ 702 ]

of that decree must be amended to read "in a civil *or criminal* case in a justice court."[9]

■ We do not agree with defendant's apparent contention, however, that he may also act as an attorney for other persons in all proceedings in all "inferrior courts," including all district courts and municipal courts.

ORS 51.300 provides that a judge of a district court "may exercise the powers and duties of justice of the peace" at the request of the justice of the peace, in the event of a vacancy in the office of justice of the peace or in the event of the incapacity or disqualification of the justice of the peace.[10] When a district judge sits as a justice of the peace by reason of the provisions of this statute, it would follow, in our opinion, that any person who, under ORS 52.060, "may act as attorney for another in a justice's court," may also appear before a district judge sitting as a justice of the peace.

When a district judge undertakes to exercise the powers and duties of a justice of the peace, as provided by ORS 51.300, he is then sitting as a justice of the peace. It follows that an appearance before him under such circumstances is not an appearance in a district court, but is an appearance in a justice court. It does

---

[9] Of further interest on this point is *Packwood v. State,* 24 Or 261, 263-64, 33 P 674 (1893). In that case the justice court denied a meritorious motion for change of venue in a criminal case and the circuit court affirmed defendant's conviction. No provision was made in the general criminal procedure statute at that time for change of venue in a *misdemeanor* case. However, another statute provided that a justice of the peace may change the place of trial for prejudice. This latter provision was held applicable to both civil *and criminal* actions and was held to be one of the exceptions referred to in the statute which was the predecessor to ORS 156.010.

[10] ORS 51.300 provides:

"A judge of the district court for a county may exercise the powers and duties of justice of the peace of any justice's court in the county:

"(1) At the request of the justice of the peace of the justice's court;

"(2) In the event of a vacancy in the office of the justice of the peace, until the vacancy is filled as provided by law; or

"(3) In the event of the incapacity or disqualification of the justice of the peace, during the period of such incapacity or disqualification."

not follow, however, that "any person may act as attorney for another" in any other proceeding before a district judge or in a district court, including those in which district courts and justice courts have concurrent jurisdiction.

■ As for municipal courts the decree and permanent injunction provides that defendant may appear as an attorney "in a *civil* case in any municipal court which authorizes such appearances by city charter or code." Indeed, it appears from the record that the municipal court of the City of Eugene has authorized defendant to appear in that court in one proceeding.

The trial court properly limited such appearance to municipal courts which so authorize such appearances. *See Balcom v. Municipal Court,* 23 Or App 218, 541 P2d 1307 (1975), in which the Court of Appeals properly held that ORS 52.060 did not authorize this same defendant to appear as an attorney for another person in the municipal court of Springfield. Because, however, it is possible that a city charter or code may authorize such an appearance not only in a civil case, but also in a *criminal* case, the decree should be amended to so provide.

■ *Defendant's fourth assignment of error* is that "the Court erred in its contention that the Legislature has no right to determine who may practice law in the state." Defendant does not point out, however, where the trial court made such a "contention."

In *State Bar v. Security Escrow, Inc., supra,* at 83-84, this court said that:

"* * * The question whether either the court or the legislature has the exclusive power to define the practice of law is a question of constitutional importance, involving, as it does, the frontier between the separated powers of government under our state constitution. It is not a question upon which *dictum* should be lightly scattered. We decline to express an opinion upon this question in this case for two good reasons: (1) The question has not

been briefed and argued with the thoroughness it deserves when and if it needs to be decided. (2) It is not necessary to decide the question because the legislature has not, since 1937, undertaken to define the practice of law."

Similarly, in this case, in which defendant has expressly admitted that he has engaged in conduct constituting the "practice of law," we see no need to decide "whether either the court or the legislature has the exclusive power to define the practice of law."

■ *Defendant's fifth assignment of error* is that "[t]he Court erred in not allowing defendant a change of judge" before ruling upon plaintiff's motion for a summary judgment.

It appears from the trial court file, however, that the trial judge who granted plaintiff's motion for summary judgment was the same judge who, after hearing testimony and argument, had previously entered an order restraining and enjoining defendant from engaging in the practice of law during the pendency of this lawsuit.

ORS 14.270 provides that:

"* * * [N]o motion to disqualify a judge to whom a case has been assigned for trial shall be made after the judge has ruled upon any petition, demurrer or motion other than a motion to extend time in the cause, matter or proceeding, except that when a presiding judge assigns to himself any cause, matter or proceeding * * *."

*See also State v. Harrison,* 253 Or 489, 492, 455 P2d 613 (1969).

It follows that the trial court did not err in denying defendant's motion for a change of judge.

■ *Defendant's sixth assignment of error* is that "[t]he Court erred in allowing the State Agency to appear by private counsel," contending that the Oregon State Bar ·is a state agency subject to ORS 180.220, which

provides that no state agency shall employ private counsel.[11]

It is true that the Oregon State Bar is not a "board," "commission," "department" or "institution" of the state, but that, by the terms of ORS 9.010, it is a "public corporation and an instrumentality of the Judicial Department." In any event, even if ORS 180.220 applies to the Oregon State Bar, it would not affect the merits of this case and defendant has not pointed out where and how this contention was made by him in the trial court and overruled by that court. In cases such as this, this court is a court of review to correct errors committed by trial courts. It follows that the question whether the trial court "erred in allowing the State Agency to appear by private counsel" is not properly before this court on the appeal of this case. *See Rohner et ux v. Neville,* 230 Or 31, 44, 365 P2d 614, 368 P2d 391 (1962), and *Harryman v. Roseburg Fire Dist.,* 244 Or 631, 633, 420 P2d 51 (1966).

■ *Defendant's seventh assignment of error* is that "[t]he Court erred in granting summary judgment when there were facts for a jury to decide," contending that "[s]ummary judgment should never be granted where there is a genuine issue to any material facts" and that "[d]efendant's third amended answer is a general denial of the plaintiff's complaint."

ORS 18.105(4) provides that:

"* * * When a motion for summary judgment is

---

[11] ORS 180.220 provides:

"(1) The Department of Justice shall have:

"(a) General control and supervision of all civil actions and legal proceedings in which the State of Oregon may be a party or may be interested.

"(b) Full charge and control of all the legal business of all departments, commissions and bureaus of the state, or of any office thereof, which requires the services of an attorney or counsel in order to protect the interests of the state.

"(2) No state officer, board, commission, or the head of a department or institution of the state shall employ or be represented by any other counsel or attorney at law.

"* * * * *"

made and supported as provided in this section, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this section, must set forth specific facts showing that there is a genuine issue as to any material fact for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

In this case defendant did not respond to plaintiff's motion for summary judgment "by affidavits or otherwise," as provided in ORS 18.105, so as to set forth any "specific facts showing that there is a genuine issue as to any material fact for trial." On the contrary, defendant also twice moved for summary judgment. In both of those motions it was expressly stated by defendant that "there is no genuine issue as to any material fact." It follows that the trial court did not err in granting summary judgment.

*Defendant's eighth assignment of error* is that "[t]he Court erred in denying defendant trial by jury when the charge was a crime." In support of this assignment of error defendant contends that "[d]efendant requested trial by jury so that a jury could determine the law and the facts as well as the justification of the law."

As previously noted in discussing defendant's first assignment of error, this case was properly the subject of a suit in equity for an injunction, to be tried by the court without a jury, despite the fact that a criminal penalty is also provided by ORS 9.990(1) for the unauthorized practice of law in violation of ORS 9.160.

*Defendant's ninth assignment of error* is that "[t]he Court erred in ignoring the law laid down by the U.S. Supreme Court in the [next friend] doctrine." In support of this assignment of error defendant cites *Johnson v. Avery,* 393 US 483, 498 (1969), as holding that:

"* * * Laymen—in and out of prison—should be allowed to act as 'next friend' to any person in the

preparation of any paper or document or claim, so long as he does not hold himself out as practicing law or as being a member of the Bar."

Defendant says that he has "relied on that decision in assisting his friends in the drafting of pleadings in scores of cases before the state and federal courts for many years."

The quotation by defendant from *Johnson v. Avery, supra,* is not from the majority opinion in that case, but from a concurring opinion by Justice Douglas.

The question to be decided in *Johnson* was the validity of a rule of the Tennessee State Penitentiary prohibiting prisoners from assisting other prisoners in the preparation of writs of habeas corpus for post-conviction relief. The majority of the court held (at 485) that writs of habeas corpus are "of fundamental importance" in "our constitutional scheme"; that "Tennessee does not provide an alternative to the assistance provided by other inmates," such as by "any regular system of assistance by public defenders" or by "a voluntary program whereby members of the local bar association make periodic visits to the prison to consult with prisoners concerning their cases," as in some other states; that in the absence of some such reasonable and available alternatives the Tennessee rule was invalid in that it abridged or impaired the right of prisoners to apply to the federal courts for writs of habeas corpus for post-conviction relief, and that "the power of the state to control the practice of law cannot be exercised so as to abrogate federally protected rights."

The majority of that court did not hold, however, as apparently contended by defendant in this case, that a nonlawyer has a federally protected constitutional right not merely to assist prisoners in jail to prepare writs of habeas corpus when there is no other reasonable available alternative for assistance, but to "practice law in the inferrior [sic] courts" and to "draft pleadings, briefs and demurrers for scores of people"

who do not appear to be prisoners without other alternatives for assistance, as admitted by defendant in this case. Neither is this court willing to so hold.

Defendant does not cite any authority or show any basis to support a contention that his "friends" have a "federally protected right" to his "assistance" when such "assistance" involves the practice of law. Indeed, what the court was protecting in *Johnson* was the federally protected right of a prisoner to assistance by a fellow prisoner in the preparation of writs of habeas corpus. It did not hold that the fellow prisoner had a federally protected right to provide such assistance.

*Defendant's 10th assignment of error* is that "[t]he Court erred in allowing an injunction contrary to law," contending that "the temporary and permanent injunction violated Oregon law, to wit; ORS 52.060 and the [next friend] doctrine established by the United States Supreme Court in *Johnson v. Avery* (supra)."

These contentions have been previously decided in discussions of defendant's third and ninth assignments of error.

*Defendant's 11th assignment of error* is that "[d]efendant's admissions were authorized in law and the Court erred in not recognizing these legislative facts." In support of this assignment defendant contends that "what [he] is doing is absolutely authorized since [he] charges no fee for his assistance but intends to charge a fee for inferrior [sic] court representation in the future."

Thus, even though defendant may have charged no fees for his services in the past, he has stated that he intends to do so in the future for at least some of his services. It follows, for reasons previously stated in discussion of defendant's first assignment of error, that the entry of an injunction to restrain him from such future conduct was proper.

In any event, this court has previously held in *State Bar v. Security Escrows, Inc., supra,* at 90, that an

escrow agent may not engage in the unauthorized practice of law despite the fact that it makes no charge for such services. In determining whether there has been unauthorized practice of law, it is not controlling whether compensation has been charged or received for legal services, at least when the service has been provided as an incident to a business relationship or by someone claiming to have special knowledge or expertise in legal matters, as in this case. This is in accord with decisions by many other courts which have considered this question. Thus, as held in *Darby v. Mississippi State Board of Bar Admissions,* 185 So 2d 684, 687 (Miss 1966):

"* * * [T]he practice of law does not necessarily involve charging or receiving a fee for services performed. The element of compensation for such services may be a factor in determining whether specified conduct constitutes the practice of law, but it is not controlling. The character of the service and its relation to the public interest determines its classification, not whether compensation is charged for it. * * *"

To the same effect, as held in *In re Baker,* 8 NJ 321, 85 A2d 505, 514 (1951), quoting from *State ex rel Wright v. Barlow,* 131 Neb 294, 268 NW 95, 96 (1936):

"* * * 'Defendant insists that to constitute the practice of law one must hold himself out as a licensed attorney and receive a fee for his service. We think that this claim is not well founded. One may represent a client in court, draw the pleadings for his client's cause and actually try it in court without receiving a fee for such service. Certainly, no one would contend that such acts do not constitute the practice of law.

" '* * * * * *

" 'It might as well be said that a surgeon who performs, without fee or reward, a tonsillectomy or appendectomy is not practicing surgery.' * * *"

To the same effect, *see e.g., Ferris v. Snively,* 172 Wash 167, 19 P2d 942, 90 ALR 278 (1933); *People v. Association of Real Estate Tax Payers,* 354 Ill 102, 187 NE 823 (1933); *State Bar of Arizona v. Arizona Land Title & Trust Co.,* 90 Ariz 76, 366 P2d 1 (1961);

[ 710 ]

*Arkansas Bar Ass'n v. Block,* 230 Ark 430, 323 SW2d 912 (1959); *Winkenhofer v. Chaney,* 369 SW2d 113 (Ky 1963); *State ex rel Daniel v. Wells,* 191 SC 468, 5 SE2d 181 (1939); and *Hexter Title & Abstract Co. v. Grievance Committee,* 142 Tex 506, 179 SW2d 946 (1944). As to what constitutes the practice of law, *see generally* Annotations in 111 ALR 19 (1937); 125 ALR 1173 (1940); and 151 ALR 781 (1944).

It follows that the trial court did not err in "not recognizing" that "defendant's admissions were authorized in law."

■ *Defendant's 12th assignment of error* is that "[t]he Court erred in construing Justice's courts as under state control when said justices allowed defendant to represent others in criminal cases." In support of this assignment defendant contends that "[m]unicipal Court judges in Lane County's courts are appointed and not elected as required by the Constitution."

Defendant does not show that any such contention was made by him in the trial court and ruled upon adversely to him in that court. Again, because this is a court of review for errors properly raised in the trial court, the validity of the appointment of such municipal judges is not properly before us for consideration in this case. The question whether defendant may appear in criminal cases in justice and municipal courts has been previously discussed under defendant's third assignment of error.

*Defendant's 13th and last assignment of error* is that "[t]he court had no jurisdiction to issue any injunction without demanding an undertaking as required by law" because "the Bar filed this suit as a private Association and therefore not exempt from ORS 32.020."[12]

_____
[12]ORS 32.020 provides:

"An injunction may be allowed by the court, or judge thereof, at any time after the commencement of the suit and before decree. Before

 The question whether an undertaking was required for the temporary injunction issued in this case is not a proper issue in this case, although perhaps a proper issue in the companion case of *State ex rel Oregon State Bar v. Wright,* 280 Or 713, 573 P2d 294 (1977), decided this day, in which defendant appeals from an order holding him in contempt for violating the terms of that temporary injunction. As to the permanent injunction, however, no undertaking is required even where the plaintiff is a private party because ORS 32.020, by its terms, requires an undertaking only upon the allowance of an injunction "after the commencement of suit and *before decree,*" i.e., the entry of a preliminary or temporary injunction. *See also Henderson v. Tillamook Hotel Co.,* 76 Or 379, 386, 148 P 57, 149 P 473 (1915); and *State v. LaFollette,* 100 Or 1, 9, 196 P 412 (1921).

For all of these reasons, the decree of permanent injunction as entered by the trial court is affirmed, except as modified to the extent that it shall be amended so as to provide that defendant "may appear as counsel as defined in ORS 9.310 in any civil *or criminal* case in a justice court or as counsel in the civil *or criminal* case in any municipal court which authorizes such appearances by city charter or code. * * *"

Affirmed, as modified. Costs to respondent.

---

allowing the injunction, the court or judge shall require of the plaintiff an undertaking, with one or more sureties, to the effect that he will pay all costs and disbursements that may be decreed to the defendant, and such damages, not exceeding an amount therein specified, as he may sustain by reason of the injunction if the same be wrongful or without sufficient cause."