Argued and submitted July 19, affirmed December 15, 1999

Edward PAHL,
*Petitioner,*

*v.*

BOARD OF CHIROPRACTIC EXAMINERS,
*Respondent.*

(97-1016; CA A101644)

993 P2d 149

Andrew D. Coit and Des Connall, a Professional Corporation, filed the brief for petitioner.

Richard D. Wasserman, Assistant Attorney General, argued the cause for respondent. With him on the brief were

Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Linder, Presiding Judge, and Deits, Chief Judge,* and Brewer, Judge.

LINDER, P. J.

---

* Deits, C. J., *vice* Warren, S. J.

## LINDER, P. J.

Petitioner seeks review of a final order of the State Board of Chiropractic Examiners (board) in which the board suspended petitioner's license and found by default that petitioner had engaged in "unprofessional conduct." Petitioner argues that the board had no authority to suspend his license because, before the order of suspension was entered, petitioner voluntarily surrendered his license. We disagree and affirm.

The board notified petitioner, who was then licensed as a chiropractor, of its intent to suspend him based on inappropriate sexual contact with a female patient and inadequate record-keeping. After receiving the notice, petitioner voluntarily surrendered his chiropractic license without admitting any of the board's allegations. The board refused to accept the surrender. Petitioner did not request a hearing on the proposed suspension or otherwise respond to the board's allegations. The board therefore entered a default order, finding that petitioner had committed the violations as alleged and imposing a one-year suspension, conditions and limitations on petitioner's practice, and a penalty. Petitioner filed a motion for reconsideration, arguing that the board did not have authority to discipline petitioner because he voluntarily surrendered his license. The board denied the motion, and petitioner sought judicial review.

■    On review, petitioner renews the position he took below, arguing that by voluntarily surrendering his license, he abandoned his property interest in it, and it therefore no longer existed. Consequently, according to petitioner, the board was "without jurisdiction to act." The state responds that the board has no legal obligation to accept petitioner's voluntary surrender of his license and that for the board to be required to accept the surrender of a license in these circumstances would defeat the board's regulatory role.

The starting point is to recognize that professional licenses are statutory creations and that the circumstances of their creation and termination are thus subject to legislative control. As the Supreme Court aptly put it in *Oregon State Bar v. Wright*, 280 Or 693, 697, 573 P2d 283 (1977), "there is

no 'right,' as a matter of 'free enterprise,' " to engage in a regulated profession. Instead, the privilege is exercised only pursuant to whatever licensing requirements the legislature establishes to protect the public from unscrupulous, unqualified, or inadequately trained individuals who attempt to engage in such professions. *See id.* at 698.

We begin, therefore, by examining ORS chapter 684, which governs the licensing of chiropractors. Significantly, the statutes provide for only two methods by which a chiropractic license terminates: expiration and revocation. Expiration occurs automatically when the license lapses due to nonpayment of fees or failure to comply with continuing education requirements. ORS 684.090(2). Revocation requires an act of the board. ORS 684.100(9). Voluntary surrender of a license is not expressly contemplated in the statutory scheme, and the statutes provide no guidance as to when unilateral relinquishment of a license is effective to terminate the board's authority over a licensee. The question, then, is whether a licensee's ability to voluntarily surrender a license is somehow implicit in the statutory scheme and the licensee's status. We conclude that it is not because to permit a licensee to unilaterally terminate a license in the face of professional discipline would be fundamentally at odds with the board's regulatory responsibilities.

As part of its general regulatory charge, the board is authorized to take any action "reasonably necessary" to carry out its disciplinary function. ORS 684.155(8). The board may initiate disciplinary proceedings for, among other conduct, fraud, misrepresentation, professional impairment due to substance abuse, unwarranted treatments, and deceptive, misleading, or unethical practices. *See generally* ORS 684.100(1)(a)-(s). In determining appropriate sanctions, the board's authority and discretion are equally broad ranging. It may suspend judgment, place the person on probation, suspend or revoke the person's license, limit the person's chiropractic practice, order civil penalties, and take *any* other disciplinary action that the board believes is warranted. ORS 684.100(9).

■    To imply from that statutory scheme that a licensed chiropractor faced with professional discipline may avoid the

board's regulatory reach by unilaterally surrendering his or her license would seriously undermine the board's responsibility to protect the public's interest. Professional misconduct would go unpunished, and the licensee would suffer no official consequence for abusing the license. As important, the public record would be silent. That silence would render it uncertain whether this board or other regulators could consider petitioner's conduct if he later applies for a new chiropractic license or a license in a related field. Assuming that regulators legally could do so, they might be hampered in practical terms by the unavailability of witnesses and the staleness of evidence and information. Meanwhile, other jurisdictions would have no notice of the concerns that prompted petitioner to cease practicing in this state. *See generally* ORS 684.060 (reciprocity provision for persons licensed to practice in another state); ORS 684.100(1)(s) (providing for discipline of an Oregon-licensed chiropractor based on suspension or revocation in another state). Quite simply, the legislature did not provide for licensed chiropractors to be able to frustrate the regulatory process in that way, and we decline to imply that ability. To the contrary, necessarily inherent in the statutory scheme is the board's authority to reject a tendered relinquishment in those circumstances where relinquishment would so frustrate the board's disciplinary responsibilities. *See generally SAIF v. Wright*, 312 Or 132, 137, 817 P2d 1317 (1991) (statutes can confer authority to an agency either expressly or by necessary implication).

■■ Our analysis does not mean that the board lacks authority to accept a licensee's voluntary relinquishment of the license in the context of a disciplinary proceeding. At a minimum, ORS 183.415 would permit the board to do so on terms it believes are appropriate. Under subsection (5) of that statute, unless the agency is otherwise precluded by law from doing so, an agency may dispose informally—*e.g.*, through stipulation, settlement, or consent—of a matter that is subject to a contested-case hearing. Petitioner's offer to voluntarily surrender his license can be viewed as an invitation to the board to agree to an informal resolution by which he would give up his license and the board would abandon its disciplinary proceeding. The board was *not obligated to agree*

to that informal disposition, however. The statute's requirement that the parties "agree" to the informal resolution necessarily means that the board was entitled to decline to accept it.[1] Moreover, as we have already concluded, the board has inherent authority to reject such a tender where to accept it would undermine its disciplinary role.

Petitioner's arguments to the contrary are not persuasive. Petitioner asserts, first, that because a licensee has a property interest in a licensee, it is the licensee's property interest to abandon as he chooses. For that proposition, he relies on *State ex rel Black v. Amer. Recovery*, 12 Or App 139, 505 P2d 1166 (1973). There, a licensed collection agency had voluntarily surrendered its license, then later requested that it be restored and, without applying for a new license, again began conducting business. *Id.* at 141. In *Black*, we merely recognized that, for purposes of determining a licensee's status to continue conducting business under a license, the fact that a license was voluntarily surrendered, if that indeed occurred, would be material. Because there was an issue of fact on the question, we concluded that the regulatory authority's complaint for an injunction should not have been dismissed. *Id.* at 142-43. Nothing in that case answers whether, when, or how a voluntary surrender can be accomplished.

The same is true of *Schurman v. Bureau of Labor*, 36 Or App 841, 585 P2d 758 (1978), on which petitioner also relies. There, an agency revoked a license that had previously expired. The issue was not *whether* the license had terminated. Instead, the issue was the scope of the agency's authority to proceed given that the license indisputably had terminated. We concluded that the agency did not have the power to revoke the license or take other disciplinary action because the license no longer existed.[2] *Id.* at 844. The issue

---

[1] Some agencies have codified that authority in their rules. *See, e.g.*, OAR 801-010-0115 (surrender of certified public accountant license effective only upon acceptance by the board); OAR 833-030-0001 (professional counselors and therapists may voluntary surrender license only by express written consent of board); OAR 845-005-0066 (liquor license remains in effect until Commission accepts surrender).

[2] In *Schurman,* the agency did not have express statutory authority to proceed despite expiration or nonexistence of the license. Since we decided *Schurman,* the

here, in contrast, is whether petitioner's attempted voluntary relinquishment of his license had the effect of terminating the license for all purposes. *Schurman* does not aid petitioner on that issue.

Petitioner may be correct that, as a general proposition, a licensee's voluntary surrender of a license operates as an abandonment of his or her own property interest in it. *See generally State ex rel Black,* 12 Or App at 142 (unilateral abandonment of license puts licensee in position of new applicant). But that point bears only on the licensee's interest, not the state's regulatory interest in the licensee's conduct. Whether a licensee's abandonment of any "property" interest in a professional license also operates to cut off the agency's regulatory authority must be analyzed by reference to the relevant statutory scheme, not common-law notions of property interests and their abandonment.

As we have concluded, a chiropractor's voluntary relinquishment of his or her professional license does not divest the board of disciplinary authority over the licensee under this regulatory scheme. Consequently, in this case, when petitioner did not request a hearing in response to the notice of disciplinary action, the board had authority, "upon prima facie case made on the record of the agency," to enter a default order. ORS 183.415(5)(a) and (6). The board did not err in doing so.

Affirmed.

---

legislature has amended several professional licensing schemes to provide expressly for that authority. *See, e.g.,* ORS 674.320 (real estate appraisers); ORS 673.697 (tax consultants and preparers); ORS 675.540(3) (social workers); ORS 677.175(3) (physicians, surgeons, and podiatrists); ORS 744.011(1) (insurance agents, adjusters, consultants). The absence of a similar provision in the board's authorizing statutes does not affect our analysis here. The issue in this case is whether petitioner could force the board to accept a voluntary relinquishment of his license, not what authority the board would have if it had done so before initiating disciplinary proceedings.