STATE

v.

**Andrew A. BUCCI.**

**No. 80–167–C.A.**

Supreme Court of Rhode Island.

May 27, 1981.

Dennis J. Roberts, II, Atty. Gen., Judith Crowell, Sp. Asst. Atty. Gen., for plaintiff.

Aram K. Berberian, Michael J. Kiselica, Warwick, for defendant.

## OPINION

WEISBERGER, Justice.

This is an appeal from a judgment of conviction in the Superior Court wherein the defendant, Andrew A. Bucci, was found guilty of giving legal advice to one Robert Oliva at a time when the defendant was suspended by order of this court from the practice of law. We affirm.

The defendant was initially charged in the District Court of the Eighth Division on a complaint which alleged that

"on various Divers dates between February 14th., 1978 to April 14, 1978, [defendant furnished] legal advise [*sic*] to Robert Oliva, alias Robert Verduchi alias John Doe, the said Andrew A. Bucci, Jr. not being an attorney at Law in violation of 11–27–10 [G.L. 1956 (1969 Reenactment)]." [1]

The defendant was found guilty in the District Court and was sentenced to pay a $500

---

1. General Laws 1956 (1969 Reenactment) § 11–27–10 reads as follows:

"Agreement to furnish legal services.—No person or persons, except such members of the bar, either in his or their own name or names or under any firm or trade name, shall furnish or agree to furnish legal advice, service or counsel, nor furnish or agree to furnish an attorney at law, nor advertise in any manner that he or they will furnish or agree to furnish legal services or advice or the services of an attorney at law, but nothing in this section shall be deemed to permit members of the bar to advertise contrary to the ethics of their profession."

fine. This fine was in excess of the statutory maximum penalty for the offense set forth in G.L. 1956 (1969 Reenactment) § 11–27–14. That section sets forth as maximum penalties for a first conviction a fine not to exceed $250 or imprisonment not to exceed six months or both. The defendant appealed from the judgment of conviction in the District Court in accordance with the provisions of G.L. 1956 (1969 Reenactment) § 12–22–1, as amended by P.L. 1976, ch. 173, § 5, and was accorded a trial de novo in the Superior Court in accordance with § 12–17–1, as amended by P.L.1974, ch. 118, § 13. After jury trial in the Superior Court defendant was again found guilty and was sentenced to imprisonment for six months. This appeal ensued.

The defendant had been suspended from the practice of law by order of this court entered August 22, 1977 and effective September 22, 1977. It is undisputed that at all times pertinent to this case the suspension was in effect. During the course of the suspension defendant was introduced to Robert Oliva by one Edward D'Alo, who was a codefendant with Oliva in respect to charges arising out of the armed robbery of a United Parcel Service truck in Warwick, Rhode Island. D'Alo, according to Oliva, suggested that defendant might represent Oliva effectively even though he had been suspended from the practice of law and could not actually appear in court.

Following this initial meeting, Oliva and defendant had a number of meetings and telephone conversations concerning Mr. Oliva's legal difficulties. Not only did Mr. Oliva stand accused of the robbery but he had also earlier been charged with the violation of a previously imposed suspended sentence for issuing a bad check to Blue Cross of Rhode Island.

Unknown to defendant, Mr. Oliva had offered to cooperate with representatives of the Federal Bureau of Investigation, the United States Attorney, the Federal Organized Crime Strike Force, the Rhode Island State Police, and the Department of the Rhode Island Attorney General. Incident to this agreement of cooperation, Oliva permitted the recording of conversations and telephone calls between him and defendant. The recordings and transcripts of the recordings were introduced into evidence in the course of the trial. The conversations ranged over a variety of subjects relating to the pending charges against Oliva and included discussions of appropriate and advantageous venue, validity of searches, interviewing of witnesses, and many other subjects of mutual interest in the management of pending criminal litigation.

In support of his appeal, defendant raises three issues with which we shall deal in the order in which they were presented in defendant's brief.

The first argument asserts that defendant was charged with giving legal advice but was actually found guilty of obtaining another attorney to represent Oliva. Consequently, defendant contends that the trial justice should have granted the motion for judgment of acquittal "predicated on variance between allegata and probata." In making this contention, we believe that defendant misconceives the nature of the evidence against him.

■ There is no question that the complaint charged defendant with the furnishing of legal advice to Robert Oliva. There is also no question that this is the charge, the elements of which it was the burden of the state to prove beyond a reasonable doubt. In defendant's request for instructions, defendant asked the court to admonish the jury that "[t]he furnishing of legal advice is the tendering of information to a client with a view to hav[e] him act thereon in * * * furtherance of the client's interest [or] business." The trial justice gave this instruction to the jury, and this definition thus became the law of the case.[2] *State v.*

2. Courts have held various types of legal advice to have been within the ambit of the practice of law. *See, e. g., Bluestein v. State Bar,* 13 Cal.3d 162, 529 P.2d 599, 118 Cal.Rptr. 175 (1974) (advice regarding the law of a foreign country); *Clark v. Rearden,* 231 Mo.App. 666, 104 S.W.2d 407 (1937) (advising assignor on legal effect of assignment for benefit of credi-

*McGehearty*, R.I., 394 A.2d 1348 (1978); *State v. Grullon*, 117 R.I. 682, 371 A.2d 265 (1977); *State v. Murphy*, 113 R.I. 565, 323 A.2d 561 (1974). Therefore, we shall use this definition as containing the necessary elements of the offense as charged. Consequently, tested by this definition, we must resolve the question of whether there was sufficient evidence, viewed in the light most favorable to the state, to present to the jury the question of whether defendant furnished legal advice to Robert Oliva. *State v. Roddy*, R.I., 401 A.2d 23, 32 (1979); *State v. Johnson*, 116 R.I. 449, 454, 358 A.2d 370, 373 (1976); *State v. Jefferson*, 116 R.I. 124, 130, 353 A.2d 190, 193–94 (1976); *State v. Wilbur*, 115 R.I. 7, 15–16, 339 A.2d 730, 735 (1975). A reading of the transcripts of recorded conversations between defendant and Mr. Oliva discloses detailed discussions of the management of Oliva's criminal litigation, which discussions covered a wide variety of subjects upon which Oliva sought information and guidance. The defendant described grand jury procedure and the pertinent law regarding search and seizure both with and without warrants; he told Oliva about a "recent California case" (presumably *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969)) which limited the area of a search incident to an arrest. All of this information was given to Oliva in respect to the management of his litigation and for the purpose of advising him what course he should take. The defendant also advised Oliva concerning the advantages of making restitution in regard to his bad check as opposed to attempting to raise an adequate defense. In sum, defendant in this case was proven by an overwhelming abundance of evidence to have taken every action in advising Oliva which a lawyer would take in respect to furnishing legal advice to his client whom he expected to act upon such advice. It is true that the evidence further disclosed that de-

fendant did retain another attorney whose function was to represent Oliva in court. However, the conversations made it clear that defendant would continue to manage the litigation and that the attorney who was to be retained was to be guided and directed wholly by defendant. Thus, the evidence in this case was more than ample to survive a motion for judgment of acquittal.

■ The second issue raised by defendant is whether it was necessary for the state to prove as an element of the charge in this case that defendant received a pecuniary benefit for the legal advice and services rendered. The short answer to this question is that the statute does not require proof that the giving of legal advice resulted in pecuniary benefit. The prohibition of § 11–27–10 contains no requirement that monetary or other consideration be received. In the case at bar the testimony of Joseph DeCaporale, an attorney retained by defendant to represent Oliva, indicated that moneys received by defendant from Oliva had been turned over to DeCaporale. However, the language of the statute is plain and unambiguous and does not include an element of pecuniary benefit. The legislative purpose in adopting this statute may well have been to protect the public against the giving of legal advice by one who is not authorized to practice law in this state. The evil that the Legislature apprehended could go far beyond the expenditure of moneys for fees and undoubtedly included the potential adverse consequences to a client of following legal advice from one not qualified or authorized to give it. *See In re Baker*, 8 N.J. 321, 85 A.2d 505 (1951). When the language of a statute is plain and unambiguous, it is not the function of this court to add to or detract from its plain meaning. *State v. Angell*, R.I., 405 A.2d 10

tors); *Oregon State Bar v. John H. Miller*, 235 Or. 341, 385 P.2d 181 (1963) (estate planning by insurers). For a comprehensive analysis of the practice of law in its various ramifications and historical perspectives, *see Rhode Island Bar Ass'n v. Automobile Service Ass'n*, 55 R.I. 122, 179 A. 139 (1935), in which this court observed:

" 'Counsel as to legal status and rights, and conduct in respect thereto, are as much a special function of the English solicitor and the American lawyer as diagnosis, prognosis, and prescription are in the field of medicine.' " *Id.* at 136, 179 A. at 145.

(1979); *New England Die Co. v. General Products Co.*, 92 R.I. 292, 168 A.2d 150 (1961); *Spear v. Respro, Inc.*, 85 R.I. 272, 129 A.2d 785 (1957). Thus, the trial justice was correct in declining to grant defendant's motion for judgment of acquittal on the ground that pecuniary benefit had not been shown and was further correct in declining to instruct the jury that pecuniary benefit was a necessary element of the offense.

Finally, defendant argues that the trial justice was without power to impose a more severe penalty after trial de novo than that which had been imposed by the District Court. In support of this proposition defendant cites *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). In that case a defendant whose conviction before the Superior Court of North Carolina had been set aside as a result of a postconviction proceeding was retried, convicted, and sentenced to a new term of imprisonment which, when added to the time already served, amounted to a longer sentence than that originally imposed. The Supreme Court of the United States determined that the imposition of a longer sentence under those circumstances was a denial of due process and set forth guidelines for the imposition of a more severe sentence upon a defendant after a new trial *within the same court* wherein the first conviction had been imposed. The purpose of the *Pearce* holding was to ensure the absence of any vindictive motive against a defendant for having successfully attacked the first conviction. However, the Court in *Colten v. Kentucky*, 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972), declined to apply the same restrictions to the imposition of a sentence after an appeal and trial de novo in a two-tier court system such as that of Rhode Island. Our court recognized the absence of such limitation in *State v. Avila*, R.I., 415 A.2d 180 (1980). Indeed, defendant in his brief recognizes the effect of *Colten* and concedes that there is no constitutional inhibition upon imposition of a greater sentence after a trial de novo. He then goes on to attack the reasonableness of the sentence and suggests that a trial justice "is not without parameters in imposing sentence."

Although the defendant's argument on this issue is not entirely clear, it would seem that he contends that the trial justice may have considered improper criteria in the imposition of sentence. We have stated previously that a challenge to the correctness or legality of a sentence should first be made to the Superior Court by a motion pursuant to Rule 35 of the Superior Court Rules of Criminal Procedure. *State v. McParlin*, R.I., 422 A.2d 742 (1980); *State v. Tessier*, 115 R.I. 372, 346 A.2d 121 (1975). Rule 35 permits the Superior Court to reduce a sentence or correct a sentence that was imposed in an illegal manner. In the absence of such a motion and determination thereof in the Superior Court, this court will not consider issues involving the legality or propriety of a sentence. *State v. McParlin, supra; State v. Tessier, supra.* Consequently, in the posture in which this case is presented to us, we cannot consider this issue on direct appeal.

For the reasons stated, the defendant's appeal is denied and dismissed, the judgment of conviction is affirmed, and the case is remitted to the Superior Court.

SHEA, J., did not participate.