STATE

v.

**Jeffrey R. CHARTIER.**

**No. 91–464–C.A.**

Supreme Court of Rhode Island.

Feb. 9, 1993.

James E. O'Neil, Atty. Gen., James Caruolo, Jeffrey Greer, Asst. Atty. Gen., for plaintiff.

Richard C. Bicki, Mary June Ciresi, Providence, for defendant.

## OPINION

MURRAY, Justice.

This case comes before us on appeal by the defendant, Jeffrey R. Chartier, from his conviction of robbery and conspiracy to rob an employee of a convenience store located in Warwick, Rhode Island. The defendant's appeal raises three issues, two concerning evidence of other criminal acts in which the defendant engaged on the night in question, and one questioning whether the state laid the proper foundation required before attempting to impeach the defendant. For the reasons that follow, we affirm the judgment of the Superior Court.

On April 17, 1989, defendant was in the company of two friends, Joseph C. Jenkins (Jenkins) and Vincent S. Piccoli, Jr. (Piccoli). The defendant and Piccoli were arrested in the early morning hours of April 18, 1989, near Roger Williams Park. In his postarrest statement made while in custody at the Warwick police station, defendant admitted to being a back-seat passenger in a car driven by Jenkins on April 17, 1989. The defendant's statement, handwritten and signed by him, revealed that he, Jenkins, and Piccoli were involved in three separate incidents that evening, each of which will be summarized below.

According to defendant, their adventures that evening began in North Providence where they socialized for a couple of hours at a local drinking establishment and proceeded to Jenkins' house to ingest cocaine. The trio thereafter drove Jenkins' girlfriend's car to a Cumberland Farms convenience store in North Providence. The defendant stated that while he remained in the back seat of the two-door vehicle, Jenkins and Piccoli entered the store, purportedly to purchase a pack of cigarettes. The defendant testified that Piccoli emerged first from the store followed by Jenkins, who "came running back into the car, jumped in the car and took off out of the parking lot." As the car raced away from the store, defendant was informed of what had happened, specifically that Jenkins had "grabbed the money out of the register." The subsequent charge against defendant with respect to this incident (hereinafter, the North Providence incident) was dismissed by the state's attorney pursuant to Rule 48(a) of the Superior Court Rules of Criminal Procedure.

The defendant testified that he and his cohorts then drove to the Manton Avenue projects where Jenkins purchased crack cocaine. For approximately one hour the trio drove around the Johnston–Scituate area smoking this substance. In the course of their travels Jenkins noticed a woman who was leaving what appeared to be a recently closed store in Johnston. The defendant's statement reveals what their intentions were at this moment:

"So Joey said she must have a lot of money, so we ended up following her on [Route] 295 south into Warwick, Joey talked about punching her in the face and taking her bag, then we all talked about ways to get her to pull over so Joey could get her bag, so he cut in front of her and locked up [his] brakes on Airport Road in [an] attempt to stop her."

The woman they were following, Kathleen Iannacone (Iannacone), collided with the rear portion of the car driven by Jenkins. The defendant, Jenkins, and Piccoli ultimately were indicted by a grand jury on the charges of assault with intent to rob and conspiracy to rob Iannacone (hereinafter, the Iannacone incident).

The last criminal episode in which these three men were involved that evening occurred soon after the Iannacone incident. The defendant admitted in his postarrest statement that while still in Warwick, "we talked about other stores to rob, I said that there was a Cumberland Farms at West Shore and Warwick Ave., next to Fiddlers."

The defendant disclosed that Jenkins drove to the store defendant had suggested, determined that it would be "an easy store to hit," and then went into the store with Piccoli. They appeared soon after, whereupon Jenkins jumped into the car,

handed Piccoli money to count, and hurriedly drove off. After a highway chase from Warwick to the Providence–Cranston line, two Warwick police officers apprehended defendant and Piccoli. Jenkins managed to escape. The defendant and Piccoli subsequently were indicted on the charges of robbery and conspiracy to rob Salem Mardo (Mardo), the employee of the Cumberland Farms in Warwick (hereinafter, the Mardo robbery).

The defendant was charged as a principal in both the Iannacone incident and the Mardo robbery because he allegedly aided and abetted his confederates in perpetrating these criminal offenses. The two cases against defendant were consolidated for trial. At the close of the state's case, the trial justice granted defendant's motion for judgment of acquittal on both charges relating to the Iannacone incident. On October 5, 1990, a Superior Court jury found defendant guilty on the two charges involving the Mardo robbery. The defendant filed a motion for a new trial, which was denied by the trial justice on October 16, 1990. The defendant thereafter was sentenced to twenty years with ten years to serve. A timely appeal was filed on November 29, 1990.

The defendant raises three issues on appeal. First, defendant asserts that the references to the alleged robbery in North Providence and the attempted robbery of Iannacone as they appeared in defendant's postarrest statement were improperly admitted and unduly prejudiced defendant. The defendant next argues that the trial justice erred in failing to advise the jury of the dispositions of the North Providence incident and the Iannacone incident, namely, the dismissal of the North Providence charge pursuant to Rule 48(a) and the judgment of acquittal on the Iannacone charges. Last, defendant maintains that the state did not lay a proper foundation before offering extrinsic evidence to impeach defendant. We shall address each issue in turn.

## I

Prior to trial defense counsel sought to exclude any evidence of the alleged robbery in North Providence through a motion in limine. In so doing, defendant offered two specific reasons for excluding this evidence: (1) there was insufficient evidence to charge defendant with this crime and (2) such evidence was highly prejudicial to defendant. The state retorted that this evidence was admissible pursuant to Rule 404(b) of the Rhode Island Rules of Evidence as it proves defendant's knowledge of this act and that there was a plan. The defense counsel then suggested that defendant could not have been part of this "plan" because he learned of the robbery after the fact and it reflected a decision made only by Jenkins after he went inside the convenience store. After weighing the evidence of the North Providence incident against any prejudice it would produce, the trial justice denied defendant's motion in limine. Defense counsel specifically stated her objection on the record that "although it is evidence of other crimes or acts, it is not evidence of other crimes of this particular defendant."

We turn now to the substantive matter of whether evidence of the North Providence incident falls within the ambit of Rule 404(b). Evidence of an accused's bad character or bad acts is generally inadmissible because the potential for creating prejudice in the minds of jurors outweighs its probative value. *State v. Santos*, 122 R.I. 799, 822–23, 413 A.2d 58, 71 (1980). Additionally evidence that in any way shows or tends to indicate that the accused has committed another crime independent of the crime for which he or she is being prosecuted, even though it may have been a crime of the same nature, may be irrelevant and inadmissible. *State v. Colvin*, 425 A.2d 508, 511 (R.I.1981); *State v. Jalette*, 119 R.I. 614, 624, 382 A.2d 526, 531 (1978).

There are numerous exceptions, however, to this exclusionary rule, as set forth in Rule 404(b) and cited with approval by this court. In *State v. Colangelo*, 55 R.I. 170, 179 A. 147 (1935), we held that evidence of other acts and conduct of the defendant at different times may be admissible at trial

when they are interwoven with the offense for which the defendant is being tried or when they directly support a finding of guilty knowledge in the perpetration of that offense, regardless of whether such acts were of a criminal nature. *Id.* at 173–74, 179 A. at 149. More recently we stated that,

> "evidence of other distinct crimes may be admissible if it tends to establish material elements of the prosecution's case such as the accused's intent, motive, plan, or his participation in a felonious scheme such as a conspiracy. * * * In such situations the jury is apprised of the accused's other criminal activity, but the conceded possibility of the prejudice is believed to be outweighed by the validity of the state's purpose in urging its introduction." *Jalette*, 119 R.I. at 624–25, 382 A.2d at 532.

■ In this case the introduction of evidence concerning the North Providence incident tends to establish defendant's knowledge of his confederates' objectives in later seeking out and driving to the convenience store in Warwick. Despite defendant's alleged ignorance of the robbery of the North Providence Cumberland Farms, his subsequent discovery of the crime upon his friends' return to the vehicle demonstrates his knowledge and acceptance of the criminal intentions of both Jenkins and Piccoli during the evening. The defendant's knowledge of the North Providence incident is a material factor in determining whether he had the requisite knowledge to have aided and abetted Jenkins and Piccoli in robbing Mardo, and thus whether he was guilty as a principal in the robbery and conspiracy to rob Mardo.

■ Finally we must consider whether defendant was unduly prejudiced by the references to the North Providence incident in defendant's postarrest statement. In permitting the jury to consider defendant's prior bad acts pursuant to Rule 404(b), the trial justice must exercise great care by offering "a specific instruction as to the limited purpose for which the evidence is being introduced." *Jalette*, 119 R.I. at 625, 382 A.2d at 532; *State v. Peters*, 86 R.I.

447, 450, 136 A.2d 620, 621 (1957). A review of the record reveals that the trial justice properly instructed the jury that,

> "evidence [of the North Providence incident] has been received solely on the issue of what we call the defendant's intent, motive, design, presence, knowledge, etcetera. It is for that limited purpose. The participation in another incident is not evidence of guilt in this case but it's evidence to show intent, motive, design and knowledge."

We therefore find that evidence of the North Providence incident was properly admitted without prejudice to defendant.

Before addressing whether defendant was prejudiced by the inclusion of references to the Iannacone incident in defendant's postarrest statement, we must review the testimony adduced at trial prior to that statement being admitted into evidence. At the start of the state's case, Iannacone took the stand as the first of the two complaining witnesses. Iannacone testified that on April 17, 1989, she drove onto the ramp on Route 295 South from Route 6 in Johnston and noticed there was a car behind her following very closely. The car continued to tailgate Iannacone's car on Route 295 and Route 37, switching lanes each and every time Iannacone did so. Iannacone stated that the car driven by Jenkins and carrying two other male passengers eventually passed her, immediately pulled in front of her, and slammed on the brakes, thereby causing Iannacone's car to strike their car from behind.

Testifying that she was reluctant to stop to speak with these three men on a dark, not heavily traveled road, Iannacone proceeded to the next intersection. Jenkins drove up next to her as she was stopped at a red light, and the three men shouted profanities at her through an open passenger window. Iannacone then drove into a nearby, well-lit parking lot that she felt was safe; Jenkins followed. A verbal altercation ensued between Iannacone and Jenkins outside their respective vehicles. Iannacone testified that she smelled alcohol on all three men and decided to call the police from her home nearby. When she

left that parking lot, the three men began following her again but then stopped at a convenience store. When she arrived home, Iannacone telephoned the Warwick police department to report what she considered to be a driving-while-intoxicated (DWI) incident. She later positively identified defendant and Piccoli as the two passengers in the car that had been following her.

The arresting officer, Detective Paul Shanley (Det. Shanley), was called to the witness stand as the state's last witness. While at the Warwick police station, Det. Shanley read defendant his constitutional rights and procured his initials and signature on a standard rights form. The defendant made both oral and written statements in the presence of Det. Shanley concerning his activities that evening. Before allowing Det. Shanley to disclose what defendant had said, however, defense counsel objected to the use of defendant's confession on the theory this court had espoused in *State v. Halstead*, 414 A.2d 1138 (R.I. 1980). Defense counsel argued that before a confession may be introduced at trial, the state must introduce some independent evidence of *corpus delicti*, which she alleged was not introduced with respect to either the Iannacone incident or the Mardo robbery.[1] After arguments were presented by both the state and defense counsel, the trial justice determined that if all the facts before the jury were accepted, there was no evidence that established that defendant and his confederates intended to rob or attempted to rob Iannacone, but there was outside evidence to support the charge of robbery and conspiracy to rob Mardo. The trial justice ordered the state to redact only that portion of defendant's statement that referred to the trio's discussion about robbing Iannacone.

 In response to this ruling, the state argued that if the trial justice were to grant defendant's inevitable motion for judgment of acquittal on the charges in-

volving the Iannacone incident, then the portion of defendant's statement referring to the Iannacone incident should be used by the state as Rule 404(b) "other acts" evidence. The state maintained that,

> "that statement would give th[e] jury highly probative evidence of Jeffrey Chartier's state of mind at the time that he and his comrades pulled into the parking lot at the Cumberland Farms. It shows their plan and what their course of conduct was going to be for the entire evening. That was a robbery spree."

Defense counsel countered that defendant's statement concerning the Iannacone incident did not fall within the purview of another crime or act as contemplated by Rule 404(b). The trial justice determined that the jury would be permitted to hear that portion of defendant's statement that referred to the vehicular contact defendant and his friends had with Iannacone. However, the trial justice did redact the portion detailing Jenkins' comment that Iannacone "must have a lot of money" and their later discussions of how to lure her to the side of the road to rob her.

Our reading of the record leads us to believe that evidence of the Iannacone incident does not properly fall within the parameters set by Rule 404(b) and this court's decisions thereon. The introduction of evidence concerning the trio's criminal intentions toward Iannacone does not establish a material element required to prove the robbery and conspiracy to rob the Cumberland Farms in Warwick. Although it is arguable that this evidence demonstrates that defendant, Jenkins, and Piccoli embarked on a robbery spree, this evidence does not prove defendant's motive, plan, design, or scheme in later robbing and conspiring to rob Mardo. The trial justice properly excluded the portion of defendant's written statement revealing the conspiracy to rob Iannacone in accordance with our rule regarding *corpus delicti* in *Halstead*. Furthermore, the trial justice properly denied the state's request to reconsider this specif-

---

1. Although not relevant to the issues argued on appeal, it should be noted that Mardo testified at length regarding what happened to him on April 17, 1989. Mardo did recall that his two

assailants drove away in a red car, but he could not identify defendant as the third passenger in that car.

ic portion of the statement in light of Rule 404(b). However, the question remains whether all references to the Iannacone incident should have been redacted from defendant's confession.

■ At the initiation of the trial, defendant was charged with four counts encompassing both the Iannacone incident and the Mardo robbery. In setting out to prove the elements of each charge beyond a reasonable doubt, the state introduced Iannacone as its first witness. When defendant's confession was ultimately moved into evidence, the portion of the statement remaining that referred to the Iannacone incident merely confirmed Iannacone's previous testimony, namely, that Jenkins initially saw Iannacone in Johnston, followed her on Route 295 to Warwick, and cut in front of her on Airport Road in an attempt to stop her. The defendant, however, claims on appeal that the redacted portion of the statement leads the jury to speculate on the significance of these events.

As the entire Iannacone incident would ordinarily be inadmissible evidence pursuant to Rule 404(b), we must now consider whether the references to this incident that were not redacted from defendant's statement would have changed the outcome of this case. The portion of defendant's statement that ultimately was presented to the jury tended merely to corroborate certain aspects of the direct testimony of Iannacone. *See State v. Benoit,* 417 A.2d 895, 901 (R.I.1980) (citing *Schneble v. Florida,* 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972)). Furthermore, the trial justice cautioned the jury "not to read anything in the blank spaces * * * just to consider the written portion." Because defendant's redacted statement offered no incriminating evidence apart from that which corroborated Iannacone's testimony, we conclude that excluding all references to the Iannacone incident would not have altered the result in this case.

## II

■ The defendant next argues that the trial justice erred in failing to advise the jury of the dispositions of the North Provi-

dence incident and the Iannacone incident. The defendant contends that three recent decisions of this court mandate that if the state introduces evidence of a crime other than the one charged and on which the defendant receives a favorable disposition, then the trial justice is required to disclose that disposition to the jury. *See State v. Tobin,* 602 A.2d 528 (R.I.1992); *State v. Woods,* 544 A.2d 141 (R.I.1988); *State v. Bernier,* 491 A.2d 1000 (R.I.1985).

Although we agree with defendant that the dismissal of the North Providence robbery pursuant to Rule 48(a) of the Superior Court Rules of Criminal Procedure and the acquittal on the Iannacone matter were relevant and material, we do not believe that it is incumbent on the trial justice alone to inform the jury of such results. It is a trial attorney's inherent obligation to present evidence to the jury that is both favorable to his or her client and admissible under the Rhode Island Rules of Evidence. A search of the record reveals that defense counsel had numerous opportunities to introduce evidence regarding the dispositions of the other charges against defendant, including the ability to request the trial justice to apprise the jury of such results. Consequently we find that the trial justice was not required to instruct the jury *sua sponte,* but that defense counsel failed to request specific jury instructions on the dismissal of the North Providence charge and the acquittal on the Iannacone charge.

## III

■ The defendant's last issue raised on appeal questions whether a proper foundation was laid before the state sought to use a prior inconsistent statement to impeach defendant's credibility. This court has held that before a prior inconsistent statement may be used on cross-examination, a "witness's attention first must be directed to the nature of the supposed statements and the circumstances under which they were made." *State v. Cianci,* 430 A.2d 756, 762 (R.I.1981). Specific circumstances to which the witness's attention must be drawn include the time, the place, and the persons present when the

supposed contradiction was made. *Dixon v. Royal Cab, Inc.*, 121 R.I. 110, 117, 396 A.2d 930, 934 (1979); *State v. Vaccaro*, 111 R.I. 59, 64, 298 A.2d 788, 791 (1973). Once the proper foundational requirements have been met, extrinsic evidence of the prior inconsistent statement is admissible under Rhode Island practice if the witness does not admit to the prior inconsistency. *See State v. LaPlume*, 118 R.I. 670, 679, 375 A.2d 938, 942 (1977).

 Prior to trial defendant sought to suppress his postarrest statement, maintaining that it was obtained from defendant against his free and unrestrained will and while defendant was highly intoxicated. The defendant also contended that while he was in police custody, he specifically requested to speak to his attorney. After a lengthy hearing, including the testimony of defendant and the arresting officer, the trial justice denied defendant's motion to suppress. A portion of defendant's testimony during this suppression hearing was the basis of defendant's inconsistent statement. Specifically, when defendant was asked whether the written statement he gave in Det. Shanley's presence was accurate, he replied yes.

On cross-examination the state questioned defendant at length regarding his testimony on direct examination that implied that Det. Shanley had improperly influenced him in writing his postarrest statement. Referring to the portion of defendant's statement regarding the robbery of the Cumberland Farms in Warwick, the state's attorney questioned defendant as follows:

"Q: And then the next statement, 'And we talked about other stores to rob. I said there's a Cumberland Farms on West Shore Road and Warwick Avenue where Fiddlers is.' Is that accurate?

"A: No.

"Q: And you are saying that under oath today?

"A: Yes.

"Q: You are saying that is not accurate because you never talked about any place to rob, is that right?

"A: No.

"Q: You never suggested that at all?

"A: No.

"Q: You recall testifying a few days ago, is that right?

"A: Yes.

"Q: I'll ask you again, do you recall on that date if your statement here was accurate or not?

"A: I don't remember.

"Q: And it's your testimony today that whatever you wanted to say to the police that Joey and Vinny were responsible for doing something Sergeant Shanley made you say we?

"A: Yes. He suggested that I say we.

"Q: Did you suggest to him in any way that it was we, Mr. Chartier?

"A: No, I did not. I told him that I had nothing to do with it. I wanted nothing to do with it.

"Q: Do you remember saying that when you testified here the other day, Mr. Chartier?

"A: I don't remember."

During redirect examination, defense counsel sought to elicit testimony regarding why defendant believed that portion of his statement was inaccurate. In response to that query, the following occurred:

"A: I didn't even know the names of the road[s] we were on then or where we were.

"Q: How did it get in your statement?

"A: Officer Shanley suggested I put the names of those roads.

"Q: Did he tell you anything about the location?

"A: He said next to Fiddlers. He used that as a landmark."

At the close of defendant's case, the state offered as a rebuttal witness Leona Charpentier, the stenographer who transcribed the testimony given during the suppression hearing. She testified that a one-and-a-half-page portion of the transcript was a true and accurate account of the testimony defendant gave during the hearing. That portion of the transcript contained defendant's assertion that the handwritten statement he gave to Det. Shanley was accurate. In an effort to impeach

defendant's credibility, the state moved this portion of the transcript into evidence over defendant's objection.

It is evident from our reading of the record that the defendant was aware of the circumstances surrounding the alleged inconsistency. When the defendant was asked whether he recalled testifying earlier regarding that same statement, the defendant undoubtedly was aware of the time, the place, and the persons present when that testimony was given just a few days before. Since it is not necessary to inform the witness of the specific content of his prior statement before using it for impeachment purposes, as long as he understands what is being asked of him, *Vaccaro*, 111 R.I. at 64–65, 298 A.2d at 791, we find that the state laid a proper foundation before using the defendant's prior inconsistent statement to impeach him.

Accordingly the defendant's appeal is denied and dismissed. The judgment of conviction appealed from is affirmed, and the papers in this case may be remanded to the Superior Court.