STATE

v.

**Richard McVEIGH.**

No. 94–116–C.A.

Supreme Court of Rhode Island.

June 29, 1995.

Jeffrey Pine, Atty. Gen., Andrea Mendes, Aaron Weisman, Asst. Attys. Gen., for plaintiff.

Francis X. Mackey, Providence, for defendant.

## OPINION

MURRAY, Justice.

This matter is before the Supreme Court on the appeal of Richard McVeigh (defendant) from judgments of conviction on eight counts of first-degree sexual assault. After a jury trial in Superior Court, the defendant was sentenced to serve two consecutive life sentences. On appeal the defendant argued that the trial justice erred in (1) denying his motion to preclude testimony about other acts, (2) asking the complaining witness her height and weight, (3) refusing to pass the case or to give the jury a cautionary instruction when a question posed by the prosecutor to a witness implied that the complaining witness was "sleeping" with the defendant, (4) denying his request to recall two of the state's witnesses, and (5) imposing two consecutive life sentences. We affirm the judgments of conviction for the reasons stated below. The facts of the case insofar as pertinent to this appeal follow.

On June 15, 1993, defendant was charged by criminal indictment No. P1/93–1915A with eight counts of first-degree sexual assault occurring at four residences in Central Falls and Pawtucket upon his biological daughter, whom we shall call Cathy, in violation of G.L.1956 (1981 Reenactment) § 11–37–2, as amended by P.L.1981, ch. 119, § 1.[1]

---

1. Counts 1, 3, 5, and 7 charged defendant with vaginal sexual penetration; counts 2, 4, 6, and 8 charged defendant with fellatio.

Cathy, a twenty-seven-year-old woman at the time of trial, testified to a long history of sexual assault by defendant that began after she left her biological mother's house and moved in with defendant, his wife, and their three children in February 1981 when she was fifteen years old. After she moved in with defendant and his family in their Central Falls apartment, his wife committed suicide in May 1981 and the defendant's son ran away from home. Thereafter defendant began to drink alcohol excessively, and he increasingly placed demands upon Cathy to manage the household and to take care of his younger daughters, whom we shall call Theresa and Patricia, aged five years old and six years old respectively. Cathy essentially assumed the role of the mother in the household.

The defendant's acts of sexual assault upon Cathy commenced one evening after he came home drunk and ordered her to join him in his bedroom so that he could show her how much he loved her. When Cathy refused, defendant struck her over the head with what she believed to be a telephone. The next day she woke up in defendant's bed with a bump on her head and discovered that her clothing had been removed. Although defendant promised that it wouldn't happen again, the very next night defendant ordered Cathy to go to his bedroom. When Cathy resisted, defendant became violent and threatened her that if she refused he would take Theresa or Patricia into his bedroom, a threat that defendant would frequently express to coerce Cathy to succumb to his sexual advances. Believing defendant's threats against Theresa and Patricia, Cathy joined defendant in his bedroom whereupon the two struggled and fought with their fists. Positioned on his bed naked, defendant instructed Cathy to remove her clothing and then he grabbed her hair at the back of her head and forced his penis into her mouth and later put his penis into her vagina. Cathy, afraid for her life, did not resist. The defendant forced her to sleep with him in his bed that night and told her that from that point onward she was to sleep in his bed with him.

The defendant's sexual assaults upon Cathy continued when the two moved alone to a new apartment in Pawtucket in July 1981. While living there, Cathy was physically forced and psychologically coerced by defendant to engage in intercourse or fellatio almost every night. When Cathy refused to engage in sexual activity with defendant, he would beat her by punching her, kicking her, and throwing things at her. The acts of sexual assault continued when the two later moved to another apartment in Pawtucket with Theresa and Patricia. Although Cathy had her own "make believe bedroom," defendant continued to force her to sleep with him in his bed and to engage in intercourse and fellatio almost every night unless he had a girlfriend over. On one occasion, after Cathy had refused to engage in sexual activity with defendant, he physically picked her up and threw her over a couch into a partition wall.

Cathy testified that this course of conduct by defendant continued for more than three years at various residences in Rhode Island, Pennsylvania, and Massachusetts. The defendant's control over Cathy extended to all aspects of her life, and although he permitted her to work outside the home on occasion, he forbid her to have any friends or to leave the household, and he made her drop out of high school when she was sixteen years old. The defendant even possessed the revolting and outrageous desire to impregnate Cathy, and he would beat her each time she began to menstruate. Eventually defendant's physical abuse of Cathy increased to an intolerable level, causing her to fear for her life and to flee the home in 1984 when she was eighteen years old. After leaving home, Cathy had no contact with defendant until he showed up at her home uninvited when she was married in 1985 and also when her children were born between 1987 and 1990. The defendant repeatedly showed up unannounced to visit Cathy, who was then living in Attleboro, Massachusetts. These visits were disruptive and unwelcome on Cathy's part. She finally "had enough" of defendant's contacts, and in January 1992 she reported the sexual abuse to the appropriate law enforcement authorities in Attleboro, Central Falls, and Pawtucket.[2]

2. We have no information of record about any charges brought against defendant in any other state court.

On appeal defendant avers that the trial justice erred in denying his motion in limine to preclude the state from introducing at trial certain testimony of Cathy's younger half-sister Patricia. In the challenged portions of Patricia's testimony, she alleged that defendant committed digital penetration of her vagina. The defendant committed this act after having instructed her to join him in his bedroom in order to tell him what she wanted for her tenth birthday, which was the following day. Patricia testified that he told her to lie down on the bed next to him and that he then touched her on her back, arms, and vagina. The defendant had told Patricia to let him digitally penetrate her vagina because "[Cathy] let [him] do it" to her. This incident, for which defendant has not been criminally charged, occurred after Cathy had left the home approximately one year earlier.

Following arguments by counsel the trial justice denied defendant's motion in limine and admitted the testimony to show a plan and an admission by defendant. However, at the time the challenged testimony was initially elicited, the trial justice specifically cautioned the jury about the limited use of this evidence. The jury was admonished that the uncharged conduct narrated by Patricia "may be received by you for your consideration on the issue of motive, opportunity, intent, or plan." In his final charge the trial justice instructed the jury that it may not use the evidence elicited during Patricia's testimony as "proof that defendant is a bad person and therefore probably committed the crimes for which he is charged."

Although defendant acknowledges that evidence of prior bad acts is often relevant and admissible in sexual-abuse cases, he complains that the trial justice should have excluded Patricia's testimony because the incident alleged by Patricia was not closely related in terms of time, place, age, and family relationship and because Patricia's testimony was not reasonably necessary since Cathy was twenty seven years old at the time of trial and was therefore capable of telling her story directly and cogently.

Prior to the adoption of the Rhode Island Rules of Evidence in 1987, we opined "that testimony concerning * * * past, unconnected, [and] uncharged criminal behavior is not admissible to show a propensity to commit the crime charged." *State v. Woodson*, 551 A.2d 1187, 1193 (R.I.1988); *State v. Pignolet*, 465 A.2d 176, 179 (R.I.1983); *State v. Jalette*, 119 R.I. 614, 624, 382 A.2d 526, 531 (1978); *see* Rule 404(b) of the Rhode Island Rules of Evidence. We have emphasized that the rationale for excluding such other-crimes evidence is the belief that "the potential for creating prejudice in the minds of the jurors outweighs its probative value." *State v. Brown*, 626 A.2d 228, 233 (R.I.1993) (quoting *State v. Chartier*, 619 A.2d 1119, 1122 (R.I. 1993)). Nevertheless, we have recognized certain exceptions to this general rule. Other-acts evidence is admissible when the other acts " 'are interwoven with the offense for which the defendant is being tried.' " *Id.* Such other-acts evidence is also admissible when relevant to prove an accused's "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or to prove that defendant feared imminent bodily harm and that the fear was reasonable." Rule 404(b). "With proper instruction, and where *reasonably necessary* for the state to meet its burden of proof, the testimony of siblings of tender years, similarly situated and similarly abused, is relevant, probative, and admissible corroborative evidence." (Emphasis added.) *Pignolet*, 465 A.2d at 182.

We have admonished that even when such evidence is admitted under an exception to Rule 404(b), a trial justice should receive it with " 'great caution' " and should specifically instruct the jury regarding its " 'limited purpose.' " *State v. Lamoureux*, 623 A.2d 9, 13 (R.I.1993). In addition, in his or her charge to the jury, a trial justice must "designate with particularity the specific exceptions" such evidence is being narrowly admitted thereto. *Jalette*, 119 R.I. at 627–28, 382 A.2d at 533.

In the instant case the state argued that the evidence was necessary to prove its case. The prosecutor represented to the court that he believed the testimony of Patricia was necessary for the state to meet its burden of

proof. The trial justice was fully justified in accepting that argument since defense counsel had made it clear that defendant would not take the stand and that his defense would be that the conduct for which he was charged did not happen. In retrospect we may disagree about its necessity, but the test we must apply is what appeared to be reasonably necessary to the trial justice at the time. *Jalette*, 119 R.I. at 627, 382 A.2d at 533.

The testimony of Cathy and the challenged testimony of Patricia suggest that defendant sexually abused his two biological daughters in a similar fashion. The uncharged conduct committed by defendant upon Patricia was closely related in terms of time, place, age, form, and family relationship to the charged acts committed by defendant upon Cathy. The form of the sexual abuse by defendant against both his daughters involved mental coercion. In the alleged incident involving Patricia, defendant persuaded her to join him in his bedroom by implying that she would get something for her tenth birthday if she complied. When Patricia resisted, defendant attempted to convince her that she should allow him to touch her because Cathy had let him. The defendant had used the same form of manipulative tactics in his sexual advances toward Cathy. For example, to initiate his first incestuous act of sexual assault upon Cathy, defendant told her to go to his bedroom so that he could show her how much he loved her. The incident of the abuse involving Patricia occurred within one year of defendant's abuse of Cathy, and the family relationship of the victims to defendant is identical. In addition, the sexual abuse of both Cathy and Patricia occurred in the same place, the defendant's bed. The only varying factor between the uncharged act and the charged acts is the age of the victims. Patricia was almost ten years old when defendant committed the uncharged act, and Cathy was fifteen years old when the abuse commenced. We view this age difference as insignificant, given the other strikingly similar characteristics of the uncharged act against Patricia and the charged acts against Cathy.

Because Patricia's testimony appeared to be reasonably necessary for the state to meet its burden of proof and because of the similarities we have outlined above, we are of the opinion that this testimony was "relevant, probative, and admissible corroborative evidence." *Pignolet*, 465 A.2d at 182.

The trial justice in this case recognized the potential prejudice to defendant when he admitted this evidence. In accordance with the procedural safeguards we have espoused, the trial justice issued an appropriate instruction to the jury specifically instructing it regarding its limited purpose. *Lamoureux*, 623 A.2d at 13; *Jalette*, 119 R.I. at 627–28, 382 A.2d at 533.

Finally, we are compelled to note that the evidence elicited by Patricia's testimony was also admitted by the trial justice specifically for the purpose of showing that defendant made an *admission* to Patricia about the sexual assaults of Cathy. Admissions made by a party are admissible. *See* Rule 801(d)(2)(A) of the Rhode Island Rules of Evidence. Although neither counsel for the state nor defense counsel discussed this issue either during oral argument or in their appellate briefs, this basis of admissibility was proper since this evidence was unquestionably relevant and probative in proving the charges against defendant.

For these reasons it is our conclusion that the trial justice properly admitted the testimony of Patricia as "relevant, material, and highly probative of defendant's lecherous conduct" toward Cathy, *Pignolet*, 465 A.2d at 182, and as an admission by defendant to Patricia of defendant's sexual assaults of Cathy, Rule 801(d)(2)(A).

The defendant next avers that the trial justice erred in engaging in the following exchange with Cathy at the conclusion of her testimony.

"THE COURT: How tall are you?

"THE WITNESS: Five feet.

"THE COURT: * * * How tall were you when you were 15?

"THE WITNESS: Four feet eleven inches.

"THE COURT: What did you weigh when you were 15 to 18?

"THE WITNESS: 90 pounds.

"THE COURT: You don't weigh much more than that now; do you?

"THE WITNESS: A little bit more.

"THE COURT: But you weighed 90 pounds in those days; did you?

"THE WITNESS: Yes."

Although he acknowledges that defense counsel did not object to the trial justice's inquiry at any time during the trial, defendant argues that the trial justice's questioning of Cathy was improper and constitutes reversible error. The state counters that defendant waived this issue by failing to make an objection at trial and that even if this issue had been preserved for review, the trial justice's questions were not improper.

■ It is, of course, the rule in this jurisdiction that matters not brought to the trial justice's attention will not be reviewed by us on appeal. *State v. Tempest,* 651 A.2d 1198, 1216 (R.I.1995) (citing *632 Metacom Associates v. Pub Dennis of Warren, Inc.,* 591 A.2d 379, 381 (R.I.1991)). An examination of the record in the instant case reveals that defense counsel did not object to the trial justice's exchange with Cathy. We therefore conclude that the failure of defense counsel to object to the trial justice's questioning of Cathy resulted in a waiver of this issue.

Even assuming we were to find that this issue was properly preserved for appellate review, we nonetheless conclude that the questions posed by the trial justice did not constitute reversible error. On several occasions we have been required to review a trial justice's examination of witnesses. "Long ago this court recognized that 'it is sometimes proper and commendable for a judge presiding in a jury trial to interrogate a witness as to relevant matters proper to be presented to the jury.' " *State v. Figueras,* 644 A.2d 291, 293 (R.I.1994) (quoting *State v. Amaral,* 47 R.I. 245, 249–50, 132 A. 547, 549 (1926)). *See also State v. Fenik,* 45 R.I. 309, 121 A. 218 (1923) (it is the court's duty to exercise scrupulous care to avoid influencing the jurors by what they believe to be his or her opinion, regardless of the soundness thereof). However, this court has warned judges to exercise caution when questioning witnesses before a jury in order to "guard against even the appearance of changing * * * position from that of a judicial officer impartially presiding at the trial to that of a partisan advocate interested in establishing the position of either party." *Amaral,* 47 R.I. at 250, 132 A. at 550.

Since *Amaral* we have unequivocally emphasized the need for caution and stated the narrow parameters within which a trial justice should question witnesses. *See State v. Giordano,* 440 A.2d 742, 745 (R.I.1982). In questioning a witness before a jury, "[a] trial justice should be certain that his [or her] questions will elicit the truth and will clarify a matter which he [or she] justifiably feels is a cause for confusion in the minds of the jurors." *Id.* at 745.

■ In the instant case Cathy's height and weight at the time of the sexual assaults were relevant since she had previously testified that she and defendant had physically fought and that defendant had often used force to overpower her. In addition, there was a significant time lapse between the period of the sexual assaults and the time of the trial during which Cathy's physical characteristics may have differed. Because neither the prosecutor nor defense counsel inquired about these subjects, this was an area that conceivably may have been a basis for confusion in the minds of the jurors. Consequently we cannot say that the questions posed by the trial justice to Cathy were improper.

In his next assertion of error, defendant contends the trial justice erred when he denied his motion to pass the case or to give the jury a limiting instruction after the prosecutor had posed the following question to Cathy's half-sister Theresa: "What sort of things did you observe * * * that led you to believe that [Cathy] was sleeping with [defendant]?"

Following a timely objection by defense counsel, a sidebar conference ensued whereupon defense counsel argued that the prosecutor's question prejudicially suggested that defendant was having sex with Cathy, not just literally sleeping with her. Defense counsel made a motion to pass the case, asserting that the question was unduly preju-

dicial. In the alternative, defense counsel requested a cautionary instruction be given to the jury.

"It is well established that a decision to pass a case and declare a mistrial lies within the sound discretion of the trial justice." *State v. Brennan*, 527 A.2d 654, 656 (R.I. 1987) (citing *State v. Anil*, 417 A.2d 1367, 1372 (R.I.1980)). In ruling on a motion to pass a case on the basis of an improper question or comment "[a] trial justice must evaluate the probable effect of the prosecutorial conduct on the outcome of the case by examining the remark or question in its factual context." *State v. Brown*, 522 A.2d 208, 211 (R.I.1987).

█ We are of the opinion that the question posed by the prosecutor was not prejudicial to defendant within the factual posture of this case because the question was posed in the context of sleeping arrangements and not acts of sexual intercourse. The record established by the state's witnesses demonstrated that defendant had forced Cathy to sleep in his bed for years. The question was therefore relevant. Any misleading connotation defense counsel perceived may have resulted from the question could have easily been dispelled on cross-examination. Accordingly we conclude that the trial justice did not abuse his discretion in denying defendant's motion to pass the case or to give the jury a cautionary instruction.

The defendant next complains that the trial justice erred in denying his request to recall Cathy and Patricia. During the trial after the state concluded its case in chief, defense counsel informed the trial justice that after hearing Patricia testify, defendant recalled that Cathy had initiated contact with defendant and met with him after she moved out and that Patricia had observed those meetings. Defense counsel sought permission to recall both Cathy and Patricia at the beginning of its case in chief, which request was denied by the trial justice. The defendant now asserts that he was denied his right to cross-examine the witnesses against him. This argument is flawed.

█ The right of an accused to confront the witnesses against him or her is guaranteed by the Sixth Amendment to the United States Constitution. *Davis v. Alaska*, 415 U.S. 308, 315–16, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347, 353 (1974). This right is also applicable in state criminal proceedings through the Fourteenth Amendment to the United States Constitution, *Smith v. Illinois*, 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968), and by art. 1, sec. 10, of the Rhode Island Constitution. *State v. Eckhart*, 117 R.I. 431, 435, 367 A.2d 1073, 1075 (1977). The right to cross-examine witnesses is of primary interest to a criminal defendant in exercising his or her rights secured by the confrontation clause. *Douglas v. Alabama*, 380 U.S. 415, 418, 85 S.Ct. 1074, 1076, 13 L.Ed.2d 934, 937 (1965). A cross-examiner should be afforded ample opportunity to develop the issues of bias, prejudice, and motivation properly before the jury. *Davis*, 415 U.S. at 318, 94 S.Ct. at 1111, 39 L.Ed.2d at 355. "[T]he permissible scope and extent of cross-examination rests in the sound discretion of the trial justice." *State v. Benevides*, 420 A.2d 65, 69 (R.I.1980). A trial justice's exercise of such discretionary power will not be disturbed on appeal unless it clearly appears that it had been improperly exercised or abused. *State v. Young*, 456 A.2d 739, 740 (R.I.1983).

█ In the instant case, defense counsel had previously cross-examined Cathy and Patricia and was given wide latitude in doing so. Defense counsel had ample opportunity to explore during cross-examination whether Cathy had initiated contact with defendant after she moved out. In fact, defense counsel vigorously attacked Cathy's delay in reporting the sexual assaults. The defendant's argument that he was denied his right of cross-examination is simply not supported by the extensive record in this case. Consequently we must conclude that the trial justice did not abuse his discretion in denying defendant's motion to recall Cathy and Patricia.

█ In his final assertion of error defendant complains that the trial justice erred in sentencing him to two consecutive life sentences. He asserts that his sentence is grossly disproportionate to the sentences re-

ceived by most criminal defendants for similar offenses.

This claim is not properly before us. We have repeatedly stated that the appropriate procedure for challenging an improperly or an illegally imposed sentence is to seek revision of the sentence initially in the Superior Court pursuant to Rule 35 of the Superior Court Rules of Criminal Procedure. *State v. Baptista*, 632 A.2d 343, 345 (R.I.1993); *State v. Tiernan*, 605 A.2d 1328, 1329 (R.I.1992); *State v. Trepanier*, 600 A.2d 1311, 1315 (R.I. 1991); *State v. Lee*, 502 A.2d 332, 334–36 (R.I.1985); *State v. Bucci*, 430 A.2d 746, 749 (R.I.1981).

Rule 35 delineates the appropriate procedural mechanisms for challenging a sentence, permitting the Superior Court to exercise leniency if it determines that the sentence was unduly severe or a shorter sentence is desirable. "[A] Rule 35 motion determination is a prerequisite to an appeal to this court as to the propriety of a sentence." *Baptista*, 632 A.2d at 345. "Only after the Superior Court has made a determination concerning the Rule 35 motion will this court consider issues involving a sentence's propriety or legality." *Id.* (citing *State v. Lee*, 502 A.2d at 335; *State v. Bucci*, 430 A.2d at 749; *State v. McParlin*, 422 A.2d 742, 745 (R.I. 1980)).

The defendant's failure to seek a Rule 35 motion determination precludes this court from considering the defendant's challenge to his sentence. We therefore deny his appeal on this specific issue without prejudice.

For the foregoing reasons the defendant's appeal is denied and dismissed. The judgments of conviction are affirmed, and the papers of the case are remanded to the Superior Court.

BOURCIER, J., did not participate.