Justice FLAHERTY,
dissenting.
I most respectfully dissent from the majority’s opinion in this case. I do so because I believe that (1) it was error to admit the seven and a half minute video into evidence; and (2) the trial justice erred when he did not provide the jury with an accident instruction.
1
The Video
It was error to admit the seven and a half minute video prominently displaying the child victim’s body because whatever probative value the video may have had, it was grossly disproportionate to its prejudicial impact and, therefore, it should have been excluded pursuant to Rule 403 of the Rhode Island Rules of Evidence. It is well settled that “Rule 408 cuts across the rules of evidence.” State v. Gaspar, 982 A.2d 140, 148 (R.I.2009). When deciding whether or not to admit evidence, a trial justice “must carefully weigh the possibility that this evidence will unfairly prejudice the accused.” State v. Brown, 626 A.2d 228, 233 (R.I.1993) (citing State v. Chartier, 619 A.2d 1119, 1123 (R.I.1993)). It does not appear from the record that the trial justice articulated, either expressly or impliedly, the balancing test required by Rule 403. This is, in my opinion, in and of itself, error. And, in the context of this case, that error cannot be said to be harmless. See State v. Pona, 948 A.2d 941, 953 (R.I.2008) (Superior Court erred when it did not attempt to strike a balance between the necessity of admission and the danger of unfair prejudice).
It goes without saying that the mere fact that the video contains images that are difficult for any reasonable person to see is not a sufficient reason to exclude it from consideration by the factfinder. To be sure, disturbing, and even shocking visual or audio images are nothing new to our jurisprudence. After all, we have said on many occasions that a criminal defendant “is not entitled to a sanitized version of the * * * evidence.” State v. Pona, 66 A.3d 454, 468 (R.I.2013). Indeed, the impact that such disturbing or gruesome images may have on the finder of fact has been addressed on many occasions by this Court.
For example, in State v. Ellis, 619 A.2d 418, 424 (R.I.1993), we upheld the admission of photographs of a victim’s head that was “blown apart by a shotgun blast.” Likewise, in State v. Brown, 88 A.3d 1101, 1118-21 (R.I.2014), we upheld the admission of autopsy photographs where the murder victim’s dissected brain was shown with hair protruding from the folded skin of his scalp. And, in State v. Patel, 949 A.2d 401, 412-14 (R.I.2008), we upheld the trial justice’s admission of a 9-1-1 recording that contained a young child’s distraught voice as he sobbed after his father was murdered before his eyes. In the recording, the rest of the family’s agonized cries could clearly be heard in the background. Id. at 413.
The state argued, and the majority apparently agrees, that the video was necessary to demonstrate the interior of the Fry home and the path that defendant and Camden took as they struggled between the bathroom and the victim’s bedroom.
The seven minute video is disturbing by any measure. However, it is significant that the video begins with a one minute and twenty second view of the exterior of the home as well as the family car and its license plate. The viewer then follows the videographer as he enters the front door of the residence, at which time a man, presumably the child’s father, can clearly *833 be heard sobbing. The footage consumes only ninety seconds inside the bathroom and then takes but a few seconds travel-ling from the bathroom into the child’s bedroom. Almost the entirety of the remainder of the video, consuming over half the footage, consists of the videographer panning the body of the dead child from every conceivable vantage point, including close-ups of the young girl’s mottled skin after the processes of rigor mortis and livor mortis have been completed. After a four and a half minute viewing of her room — three and a half of which intensely focuses on the dead child’s body — -the remaining few seconds leave the viewer with shots of the child’s bedroom, toys, and bookcase.
With all due respect to the majority, I see a difference, not merely in degree, but also in kind with respect to the images allowed into evidence in this case. The nearly silent scenes of the eight-year-old’s body as the camera moves up, down, and around her lifeless corpse are macabre, if not grotesque. Given the extremely limited probative value of the images, there can be no other purpose or result other than to evoke feelings of sympathy or disgust in the jury, to the extreme prejudice of defendant. See 'State v. O’Brien, 774 A.2d 89, 107 (R.I.2001); State v. Carter, 744 A.2d 839, 847 (R.I.2000).
In my opinion, this evidence had a feather’s weight, if that, of probative value, considering the few seconds dedicated to the state’s purported purpose of depicting the crime scene. It is clear to me that any minimal probative value that the video may have had was substantially outweighed by the prejudicial impact that it carried. Patel, 949 A.2d at 412-13 (“It is only evidence that is marginally relevant and enormously prejudicial that must be excluded.”). Therefore, the images, should not have been admitted into evidence and it was error to do so.
2
The Accident Instruction
It is also my view that, contrary to the majority’s opinion, defendant was entitled to a specific instruction with respect to the defense of accident. I come to this conclusion because (1) the entire thrust of the defense was that Camden’s death was a tragic accident and (2) that there was more than sufficient evidence to support the defense’s theory in the record to justify such an instruction. Indeed, we have explicitly said that
“where there is evidence in the record ‘in support of any defense offered by an accused, which raises an issue of fact favorable’ to the accused, he or she is entitled to an affirmative instruction which fully and fairly states' the law applicable thereto; that principle applies regardless of how ‘slight and tenuous the evidence may be * * *.’ ” Larngar v. Wall, 918 A.2d 850, 857 (R.I.2007) (quoting State v. DiChristofaro, 848 A.2d 1127, 1129-30 (R.I.2004)).
The trial justice declined to impart a specific accident instruction, instead relying on two somewhat tangential references to accident that were included in his charge to the jury. The majority embraces this conclusion, reasoning that the charge that was provided to the jury informed the panel that it could not find defendant guilty unless it determined that her actions were intentional and not the product of unintentional conduct.
I respectfully disagree. The word accident appears in the trial justice’s charge only twice in an instruction 'that spans twenty-five minutes. In his charge, the trial justice did not discuss accident as a theory of defense, but rather employed the word to modify and limn the definition of *834 intent. This passing reference was insufficient in light of defendant’s theory of -the case, which was that Camden’s death had been occasioned by unintentional conduct that occurred while defendant was attempting to restrain an unruly child. The defendant’s requested instruction,, brief as it may have been, was much more clearly focused on that theory of defense. .
Interestingly, the instruction that was given to the jury here is exquisitely similar to that in State v. Drew, 919 A.2d 397 (R.1,2007). In Drew¡ we upheld‘the trial justice’s refusal to give a specific accident instruction because a passing reference to the word “accident” during the testimony at trial did not “trigger a trial justice’s obligation to issue an accident instruction.” Id. at 405. We upheld the trial justice’s refusal to give a comprehensive accident instruction because the defendant admitted that accident was not a defense he pursued at trial and the defendant neither presented evidence of accident at trial nor argued it in his closing. In Drew, the trial justice instructed that
“As to the word ‘willfully,’ you are instructed that an act is done willfully if it is done voluntarily and intentionally and not by mistake or accident, * * * You should consider ah of the facts and circumstances in evidence that you think are relevant in determining whether the state has proved- beyond a reasonable doubt that [defendant] acted with the required intent or state of mind.” Id. at 404 (emphasis added.).
According to the Court in Drew, this “anemic reference” to accident was appropriate based on the paucity of evidence of accident presented at trial. Id. Here, the trial justice instructed the jury that •

“An act is done willfully if it is done intentionally and voluntarily arid-not by mistake or some other reason.

H ?Jí íjí * •
‘You may, however, infer a defendant’s intent from all the surrounding circumstances. You may consider any statement or act done by the defendant, and all other facts and circumstances that are in evidence which may indicate the state of her mind. An act is done intentionally and deliberately and purposefully and not because of mistake or accident or any other innocent reason.” (Emphasis added).
If the reference to accident in Drew is indeed, “anemic,” I cannot fathom how the majority reasons that the almost identical instruction employed here could have adequately apprised the jury of defendant’s accident defense. The majority attempts to differentiate this case from Drew by seeking solace in the fact that the trial justice made two passing references to the word accident instead of one. I cannot agree that that was sufficient.
Additionally, I take issue with the majority’s conclusions that an accident instruction was not justified because there was only “minimal evidence” that would support the jury’s conclusion that Camden’s death was accidental and its assessment that there was a dearth of evidence of an accidental occurrence. Under our jurisprudence, minimal evidence is all that is required. See Larngar, 918 A.2d at 857. In my view, there was much more than minimal evidence on the record.
The theme of both the opening and closing statements of defense counsel was that Camden’s death was accidental and that it occurred while the mother was attempting to restrain a resistant and flailing child. The defense offered but one witness, Dr. Elizabeth Laposata, the state’s-former medical examiner. Doctor Laposata testified that the cause of Camden’s death was consistent with an accident because it may well have'occurred while her mother was attempting to restrain her, and that the *835 cause of death was' asphyxia as a result of a combination of compression of the blood vessels on the side of the neck, compression of the torso, and obstruction of the mouth. Significantly, on cross-examination, the state’s witnesses Timothy Fry and Barbara Kettle testified that the defendant related to each of them that she tried to control the thrashing and screaming child by sitting on her and covering her mouth, and that,she had successfully employed that procedure during past instances of difficulty with Camden. Although it is not the defendant’s burden to prove that Camden’s death was an accident, the defendant more than provided minimal evidence upon which a trier of fact could conclude that the death was not intentional beyond a reasonable doubt. For these reasons, it is my opinion that the defendant was entitled to a specific accident instruction.
For the above reasons, I respectfully dissent from the majority’s opinion in this case, and I would grant the defendant a new trial.